Lawrence J. KRUG, Plaintiff–Appellee,

v.

Thomas LUTZ, Dr.; Mecoli, Dr.; Fisch-
er, NP; Cleeney, FHA; Flannigan,
Warden; D.W. Cattel, Deputy Warden;
Mike Dunn, Deputy Warden; Yolanda
Martinez, Deputy Warden; Gonzales,
Warden; Spargur; Monica Taylor,
Defendants–Appellants,

and

Felix F. Jabczenski, Jr., Dr., Defendant.

No. 01–16033.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Oct. 11, 2002.

Filed May 14, 2003.

See also 972 F.2d 1012.

## OPINION

FISHER, Circuit Judge.

Lawrence Krug is an Arizona state prisoner. He claims that Appellants, various Arizona Department of Corrections officials ("ADOC officials"), violated his procedural due process rights by failing to give him the opportunity to appeal the exclusion of incoming publications to a prison official other than the one who made the initial exclusion decision. The ADOC officials interlocutorily appealed the district court's order granting a permanent injunction in Krug's favor, and Krug cross-appealed the district court's grant of qualified immunity to the ADOC officials. We conclude that the *Hook* Consent Decree, entered into in 1973 by a group of inmates and the ADOC, does not bar Krug's claim, nor is he required to seek modification of the decree in order to obtain relief. We further conclude that Krug has a constitutional right to a two-level review of exclusion decisions. We also conclude that the ADOC officials are entitled to qualified immunity from Krug's claim for damages. We therefore affirm the district court's order.

## FACTUAL and PROCEDURAL BACKGROUND

In 1973, before Krug was incarcerated in the Arizona state prison system, inmates and the ADOC entered into a consent decree in *Hook v. Arizona*, 907 F.Supp. 1326. *See Hook v. Ariz. Dep't of Corrs.*, 972 F.2d 1012, 1013–14 (9th Cir. 1992) (discussing the history of the *Hook* Consent Decree). The *Hook* Consent Decree authorized the ADOC to exclude publications deemed to be obscene under applicable constitutional standards, and allowed inmates dissatisfied with a particular exclusion "to discuss the reasons for the exclusion with the Deputy Superinten-

---

Wanda E. Hofmann and Bruce L. Skolnik, Assistant Attorneys General, Tucson, AZ, for the defendants-appellants.

Adam N. Steinman and Julia Parsons Clarke, Perkins Coie LLP, Seattle, WA, for the plaintiff-appellee.

Before BROWNING, FISHER, and TALLMAN, Circuit Judges.

dent, whose decision shall be final." Until 1997, the reviews of decisions to exclude incoming publications as obscene were conducted by a prison official other than the one who made the initial determination.[1]

Beginning in 1997, however, the ADOC adopted a practice of having an inmate's appeal of an exclusion decision adjudicated by the same prison official who made the initial decision to exclude the publication. In late 1998, Director's Instruction 95 superseded an earlier written policy and provided that the Operations Officer for Programs would conduct both the initial screening of publications and any appeals of his exclusion decisions. A revised policy was issued in late 1999, but the substance of the relevant provisions did not change. Under these policies, ADOC officials rejected 63 publications addressed to Krug because they were deemed obscene. Krug appealed each rejection. The same ADOC official who initially rejected each publication also rejected Krug's appeal of that decision.

Krug filed his pro se complaint in the United States District Court for the District of Arizona on July 13, 1999. Krug's complaint alleged, among other things, that the ADOC's system for excluding incoming publications as obscene violated his right to procedural due process. Krug requested both injunctive relief and damages. The ADOC officials moved to dismiss Krug's due process claim, and Krug moved for summary judgment and injunctive relief on his due process claim.

On March 30, 2001, the district court granted Krug's request for injunctive relief. It directed the ADOC officials to "retract any internal procedures that are inconsistent with Plaintiff's due process right to appeal the exclusion of incoming publications to a prison official other than the one who made the original exclusion decision." The court also granted in part the ADOC officials' motion to dismiss, finding that they enjoyed qualified immunity from Krug's request for money damages arising out of the procedural due process violations.

On May 1, 2001, the ADOC officials filed their notice of interlocutory appeal from the district court's decision. The following week Krug filed a motion to strike the notice of interlocutory appeal and a response to the notice of interlocutory appeal; in each document, he stated that he wanted to challenge the district court's qualified immunity ruling. After initial briefing, in which Krug presented his qualified immunity argument, this court ordered the appointment of pro bono counsel for Krug. Following the appointment of counsel, both parties filed supplemental briefing and for the first time the ADOC officials addressed Krug's qualified immunity argument.

On October 17, 2002, six days after argument in this case, the district court granted the ADOC officials' motion for summary judgment and dismissed all of Krug's remaining claims. Krug filed a notice of appeal of that judgment, but withdrew that appeal on November 22, 2002. Thus, this appeal regarding procedural due process and qualified immunity is all that remains of Krug's case.[2]

---

1. The ADOC officials did not dispute this fact at summary judgment. At oral argument, their counsel stated that she believed there may not have been two-level review throughout the entire Arizona prison system but did not dispute that Krug had received two-level review prior to 1997.

2. When the ADOC officials filed their notice of appeal, we had jurisdiction over their challenge to the injunction. 28 U.S.C. § 1292(a)(1). Krug's challenge to the grant of qualified immunity, however, was not independently interlocutorily appealable. Because the district court's subsequent dismissal

## STANDARD OF REVIEW

 We review de novo the district court's authority to grant the permanent injunction in Krug's favor, but we review the court's exercise of that power for an abuse of discretion. *See Walters v. Reno,* 145 F.3d 1032, 1047 (9th Cir.1998). The district court's constitutional ruling on Krug's due process claim is also reviewed de novo. *See S.D. Myers, Inc. v. City & County of San Francisco,* 253 F.3d 461, 466(9th Cir.2001). Finally, we review the district court's decision on the ADOC officials' qualified immunity de novo. *See Sorrels v. McKee,* 290 F.3d 965, 969 (9th Cir.2002).

## DISCUSSION

### I. The Hook Consent Decree

 The ADOC officials argue that the district court's injunction amounts to an improper modification to the *Hook* Consent Decree and that the district court was required to decline consideration of Krug's request for a permanent injunction because his request was within the jurisdiction of the district court judge supervising the decree. We disagree.

The district court's injunction does not improperly modify the *Hook* Consent Decree and thereby deprive the ADOC of the benefit of its bargain. Consent decrees such as *Hook* are " 'in some respects contractual in nature,' " but are " 'subject to the rules generally applicable to other judgments and decrees,' " and can be enforced only to the extent that they clearly prohibit or require conduct. *Gates v. Shinn,* 98 F.3d 463, 468 (9th Cir.1996) (quoting *Rufo v. Inmates of Suffolk Coun-*

*ty Jail,* 502 U.S. 367, 378, 112 S.Ct. 748, 116 L.Ed.2d 867 (1992)). The relevant provision of the *Hook* Consent Decree does not speak directly to whether the Deputy Superintendent's "final" determination is made after his own or some other prison official's initial decision on the excluded material. The injunction requiring the ADOC officials to "retract any internal procedures that are inconsistent with Plaintiff's due process right" does not conflict with or alter any of the decree's provisions. The ADOC officials' compliance with the injunction requires no change to the terms of the decree. Instead, it requires them to modify their current practice by conducting an initial level of review prior to the Operations Officer for Program's "final" determination, just as they did prior to 1997.

The ADOC officials argue that in return for the ADOC's promise to use "applicable constitutional standards" when screening incoming publications, the inmates agreed to an expedited review process and finality. Yet the ADOC's own conduct following the approval of the decree belies the claim that one-level review was part of the bargain. Krug alleges, and the ADOC has produced no evidence to the contrary, that prior to 1997 the ADOC provided two-level review to inmates. Regardless, the bargain struck in 1973 could not have involved the knowing waiver of the inmates' constitutional right to review by a second prison official, because that right was not established until the following year, as discussed below. *See Procunier v. Martinez,* 416 U.S. 396, 418–19, 94 S.Ct. 1800, 40 L.Ed.2d 224 (1974). Even if the *Hook* Consent Decree could be read to waive inmates' rights to review by a second prison official,

with prejudice of all of Krug's remaining claims has rendered final the grant of the injunction and the grant of qualified immunity, we now properly exercise our jurisdiction over both pursuant to 28 U.S.C. § 1291. *See Anderson v. Allstate Ins. Co.,* 630 F.2d 677,

680–81 (9th Cir.1980) ("[O]rders adjudicating only some of the claims may be treated as final orders if the remaining claims have subsequently been finalized.... There is no danger of piecemeal appeal ... for nothing else remains in the federal courts.").

Krug was not an original plaintiff in the 1973 *Hook* case. Current and future ADOC inmates are third-party beneficiaries of, and not parties to, the *Hook* Consent Decree. *Hook,* 972 F.2d at 1013–15.[3] Although it appears that in 1994 there may have been a limited certification of a class to enforce the decree, *see Hook v. Arizona,* 907 F.Supp. 1326, 1332(D.Ariz.1995), this fact does not change the analysis. It is not alleged that the certification purported to bind all class members to a waiver of the right to review by a second prison official; and, regardless, it is unlikely that the certification could do so. *Cf. Schwarzschild v. Tse,* 69 F.3d 293, 295–97 (9th Cir.1995) (holding that a judgment obtained before class certification is binding only upon the named plaintiffs). Therefore, the existence of the *Hook* Consent Decree neither bars Krug's injunction nor requires him to seek a modification of the decree to enforce his rights.

Accordingly, we reject the ADOC officials' argument that the district court judge should have referred Krug's request for an injunction to the district court judge monitoring the *Hook* Consent Decree. Although the district court judge who approved the decree does retain jurisdiction to enforce it, *see Hook,* 972 F.2d at 1014, it does not follow that that particular judge has *exclusive* jurisdiction over any claims that may in some way relate to the *Hook* Consent Decree but which do not modify the decree. Krug's constitutional claim can appropriately be brought in an independent action similar to that in *Hiser v. Franklin,* 94 F.3d 1287 (9th Cir.1996). Krug's pursuing an independent claim regarding the levels of review of publication exclusions is analogous to Hiser's pursuing an independent claim regarding his ability to photocopy legal documents. In both instances, consent decrees had been entered regarding a broad category (here, publication exclusions; in *Hiser,* access to the courts), but the specific issues litigated by Krug and Hiser had not already been addressed conclusively by the decrees. *Id.* at 1289. Just as Hiser was allowed to bring his independent constitutional action, so should Krug. We have stated that "[a] court *may* choose not to exercise its jurisdiction when another court having jurisdiction over the same matter has entertained it and can achieve the same result." *Crawford v. Bell,* 599 F.2d 890, 893(9th Cir.1979) (emphasis added). This does not mean, however, that we must necessarily reverse a district court's granting of an injunction when it declines to refer the request to the district court more familiar with the facts of the case, and we decline to do so here.

## II. Krug's Procedural Due Process Claim

 Krug has a liberty interest in the receipt of his subscription mailings suffi-

3. The ADOC officials argue that Krug is bound by the terms and conditions of the decree because he is "claiming rights as a third-party beneficiary under a contract," citing *Rogers v. Speros Constr. Co.,* 119 Ariz. 289, 580 P.2d 750, 753 (1978). In *Rogers,* journeymen electricians asserted claims as third-party beneficiaries under a construction contract that set wages at a particular rate. Given that they sought enforcement of the contract, the court concluded that they would also be bound by a contract provision providing for "decision by the architect 'on all ... matters relating to the execution and progress of the work or the interpretation of the Contract Documents.'" *Id.* In contrast to the journeymen in *Rogers,* Krug is not seeking enforcement of the *Hook* Consent Decree. His complaint makes clear that his claim for two-level review is "a separate issue from *Hook*" and actually alleges that ADOC Director Stewart stated that "[a]ppeals are not covered under the *Hook* Consent [D]ecree." In any event, as discussed above, one-level review is not a term or condition of the decree and two-level review can be accomplished without modifying the decree.

cient to trigger procedural due process guarantees. *See Bd. of Regents v. Roth,* 408 U.S. 564, 569, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972) (such guarantees apply only when a constitutionally protected liberty or property interest is at stake). The Supreme Court has held that "[t]he interest of prisoners and their correspondents in uncensored communication by letter, grounded as it is in the First Amendment, is plainly a 'liberty' interest within the meaning of the Fourteenth Amendment even though qualified of necessity by the circumstance of imprisonment." *Martinez,* 416 U.S. at 417–18, 94 S.Ct. 1800. This liberty interest attaches not only to communications by letter, but also to a prisoner's receipt of subscription publications. *See Prison Legal News v. Cook,* 238 F.3d 1145, 1152–53 (9th Cir.2001) (holding that a prisoner has a "constitutionally protected right" to receive nonprofit organization's newsletter); *Frost v. Symington,* 197 F.3d 348, 353 (9th Cir.1999) (holding that a prisoner has a "due process liberty interest in receiving notice that his incoming [magazines are] being withheld by prison authorities"); *see also Morrison v. Hall,* 261 F.3d 896, 906 (9th Cir.2001) ("The Supreme Court has repeatedly recognized that restrictions on the delivery of mail burden an inmate's ability to exercise his or her First Amendment rights.").[4]

In light of this protected liberty interest, Krug has a constitutional right to two-level review. In *Procunier v. Martinez,* 416 U.S. 396, 417–18, 94 S.Ct. 1800, 40 L.Ed.2d 224 (1974), the Supreme Court held that given the liberty interest involved, the decision to censor or withhold delivery of correspondence to a prisoner must be accompanied by minimum procedural safeguards. It affirmed the district court's requirement of two-level review: "complaints [shall] be referred to a prison official other than the person who originally disapproved the correspondence." *Id.* at 418–19, 94 S.Ct. 1800. *Martinez* also had a substantive component: it held that the censorship of personal correspondence is justified if it furthers interests of security, order or inmate rehabilitation and is no greater than necessary to further the legitimate government interest at issue. *Id.* at 413–14, 94 S.Ct. 1800. Fifteen years later, the Court revisited *Martinez* and overruled parts of the earlier decision. *See Thornburgh v. Abbott,* 490 U.S. 401, 109 S.Ct. 1874, 104 L.Ed.2d 459 (1989). Although *Thornburgh* overruled *Martinez's* substantive component, it did not disturb *Martinez's* procedural due process aspects. *See Cal. First Amendment Coalition v. Woodford,* 299 F.3d 868, 878 n. 5 (9th Cir.2002) (acknowledging the limited extent of *Thornburgh's* effect on *Martinez* ).

We reject the ADOC officials' argument to the contrary. Following *Thornburgh,* this circuit has repeatedly acknowledged that withholding delivery of inmate mail

---

**4.** The ADOC officials' argument that Krug has no protected liberty or property interest in obscene material, and thus no procedural due process claim, misframes the issue. Krug is not claiming that he has a right to possess obscenity, but rather that he has a right to receive his nonobscene subscription materials and a corresponding right to fair procedures governing the withholding of allegedly obscene materials. Procedural due process is implicated even in cases where the publications at issue could be construed as allegedly obscene. *See Frost,* 197 F.3d at 353–54 (the district court erred by not considering an inmate's procedural due process claim regarding the withholding of *Penthouse* and *Gallery* magazines). As Justice Stevens observed, "[c]ommentators have discussed the importance of procedural safeguards in our analysis of obscenity. The purpose of these safeguards is to insure that the government treads with sensitivity in areas freighted with First Amendment concerns." *Chicago Teachers Union v. Hudson,* 475 U.S. 292, 303 n. 12, 106 S.Ct. 1066, 89 L.Ed.2d 232 (1986) (citations omitted).

must be accompanied by the minimum procedural safeguards established in *Martinez*.[5] *See Sorrels*, 290 F.3d at 972 (the withholding of the *Georgetown Law Journal* from an inmate "undisputed[ly]" must be accompanied by minimum procedural safeguards, including notice to the inmate); *Prison Legal News*, 238 F.3d at 1152(the withholding of an inmate's subscription newsletter must be accompanied by *Martinez* due process safeguards, including notice and administrative review). Although these cases have focused upon the minimum procedural safeguard of notice to the prisoner, the right to appeal the exclusion of incoming publications to a prison official other than the one who made the initial exclusion decision is equally necessary.[6] As noted earlier, the *Martinez* Court specifically approved of the district court's requiring two-level review, describing the combined procedural safeguards as not "unduly burdensome." 416 U.S. at 419, 94 S.Ct. 1800. In this case, it is undisputed that beginning in 1997 the ADOC stopped providing Krug with the opportunity for two-level review. Accordingly, we affirm the district court's conclusion that the ADOC's policy violates Krug's procedural due process rights, and the court's injunction requiring the ADOC officials to implement a system that provides objecting prisoners with the right to appeal the decision to exclude incoming mail to a prison

---

**5.** We therefore reject the ADOC officials' suggestions that *Martinez* is wholly inapplicable to incoming mail and that, accordingly, we must apply the "reasonableness" standard of *Turner v. Safley*, 482 U.S. 78, 89, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987), to their decision to forgo two-level review.

**6.** Other courts of appeals that have considered the question have concluded that *Martinez* requires two-level review. *See Murphy v. Mo. Dep't of Corrs.*, 814 F.2d 1252, 1258 (8th Cir.1987) (holding that appeal to prison official other than the one who made the

official other than the one who made the initial exclusion decision.

## III. Qualified Immunity

 Krug, for his part, challenges the district court's conclusion that the ADOC officials are entitled to qualified immunity from his claim for damages. As we concluded above, the ADOC officials violated Krug's procedural due process rights by failing to grant him two-level reviews. In so concluding, we have answered *Saucier v. Katz's* initial question in the affirmative. *See* 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001) ("A court required to rule upon the qualified immunity issue must consider, then, this threshold question: ... [D]o the facts alleged show the officer's conduct violated a constitutional right?"). We therefore move on:

> [T]he next, sequential step is to ask whether the right was clearly established. This inquiry, it is vital to note, must be undertaken in light of the specific context of the case, not as a broad general proposition....
>
> ... The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted.

*Id.* at 201–02, 121 S.Ct. 2151. We have emphasized that "at [*Saucier's*] second

---

initial determination was mandated by *Martinez* ); *Martin v. Kelley*, 803 F.2d 236, 244 (6th Cir.1986) (such an appeal is "necessary to ensure that future rejection decisions are fair, and based on appropriate factors"); *Hopkins v. Collins*, 548 F.2d 503, 504 (4th Cir.1977) (such appeal is one of the minimal standards of procedural due process under *Martinez* ). Although predating *Thornburgh*, these cases make clear that two-level review is inherent in minimum procedural due process.

step, the question is whether the defendant could nonetheless have reasonably but erroneously believed that his or her conduct did not violate the plaintiff's rights." *Devereaux v. Abbey,* 263 F.3d 1070, 1074 (9th Cir.2001) (en banc). In this case, we conclude that while Krug's right to two-level review was established as a general proposition, the ADOC officials could have reasonably believed that their own conduct did not violate Krug's rights.

At the time of the policy change in 1997, the right to two-level review articulated in *Martinez* had existed for over 20 years. At least 10 years before this policy change, the courts of appeals that had commented upon the issue had concluded that two-level review was required under *Martinez.*[7] *See Murphy v. Mo. Dep't of Corrs.,* 814 F.2d 1252, 1258 (8th Cir.1987); *Martin v. Kelley,* 803 F.2d 236, 244 (6th Cir.1986); *Hopkins v. Collins,* 548 F.2d 503, 504 (4th Cir.1977). It is true that during the eight years between *Thornburgh* and the 1997 policy change, our circuit had not commented directly upon *Martinez's* procedural requirements in a published opinion.[8] Yet we had done so in unpublished form. *See Smith v. Van Boening,* 29 F.3d 634, 1994 WL 379155, at *3 (9th Cir. July 20, 1994); *McGann v. Stock,* 884 F.2d 582, 1989 WL 102032, at *3 (9th Cir. Aug.28, 1989); *see also Sorrels,* 290 F.3d at 971(observing that unpublished decisions may inform our qualified immunity analysis). Given this legal landscape, Krug's right to two-level review was established, as a general proposition, at the time his procedural due process rights were violated.

But as the district court concluded, even in light of this landscape the ADOC officials could have reasonably believed that their own conduct did not violate Krug's rights. *See Saucier,* 533 U.S. at 201, 121 S.Ct. 2151(stating that courts must look to "the specific context of the case" rather than to "broad general proposition[s]"). They were acting under the provisions of the *Hook* Consent Decree, which did not clearly require the type of appeal to which Krug is constitutionally entitled. Although the *Hook* Consent Decree predated the *Martinez* and *Thornburgh* decisions, a reasonable prison official could have believed that he was acting lawfully in accord with his understanding of its provisions. Reasonable officials in this position could understandably yet erroneously have looked to the consent decree for guidance. All told, we cannot say that the ADOC officials behaved so unreasonably as to be considered among the "plainly incompetent or those who knowingly violate the law." *Malley v. Briggs,* 475 U.S. 335, 341, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986). We therefore affirm the district court's grant of qualified immunity to the ADOC officials.

**CONCLUSION**

We hold that Krug has a procedural due process right to have the decision to exclude incoming publications reviewed by a prison official other than the one who made the initial exclusion decision. The district court properly ordered the ADOC officials to retract any internal procedures inconsistent with this right. Krug's action was not barred by the *Hook* Consent De-

---

7. We have located no opinion, published or unpublished, which indicates that two-level review is not one of the minimum procedural safeguards to which prisoners are entitled under *Martinez.*

8. As the district court noted, in 1999 we cited *Thornburgh* for the proposition that inmates are entitled to procedural due process protections when incoming publications are excluded by prison officials. *See Frost,* 197 F.3d at 353–54.

cree nor was he required to seek modification of the decree to obtain relief. We further hold that the ADOC officials are entitled to qualified immunity from Krug's claims for damages arising out of the procedural due process violations. Costs are awarded to Krug.

**AFFIRMED.**