364 F.3d 1088
 The SAN REMO HOTEL L.P.; Thomas Field; Robert Field; T & R Investment Corp., Plaintiffs-Appellants,
v.
SAN FRANCISCO CITY AND COUNTY, a Municipal Corporation; Department of City Planning; City Planning Commission; Opinion Board of Permit Appeals; Board of Supervisors of the City and County of San Francisco,
Defendants-Appellees.
 No. 03-15853.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted March 8, 2004.
 Filed April 14, 2004.
 
 Paul F. Utrecht (argued), San Francisco, California, for the plaintiffs-appellants.
 Andrew W. Schwartz (argued), Office of the City Attorney, San Francisco, California, for defendant-appellee City and County of San Francisco.
 Meriem L. Hubbard, Sacramento, California, for Amicus Curiae Pacific Legal Foundation in support of the plaintiffs-appellants. Timothy J. Dowling, Washington, D.C., for amici curiae California State Association of Counties, League of California Cities, and International Municipal Lawyers Association, in support of the defendants-appellees.
 Appeal from the United States District Court for the Northern District of California, D. Lowell Jensen, District Judge, Presiding.
 Before: FERNANDEZ, HAWKINS, and THOMAS, Circuit Judges.
 HAWKINS, Circuit Judge:
 
 
 1
 In the second appeal before this court, the owners of the San Remo Hotel challenge the constitutionality of a San Francisco ordinance which restricts an owner's ability to convert "residential" hotel rooms to tourist use. A prior panel ordered Pullman abstention at plaintiffs' request, and also declared some claims unripe, deferring a decision until after the claim had been litigated in the California courts. San Remo Hotel v. City and County of San Francisco, 145 F.3d 1095 (9th Cir.1998) ("San Remo I").
 
 
 2
 After losing their state takings claims in the California courts, San Remo Hotel v. City and County of San Francisco, 27 Cal.4th 643, 117 Cal.Rptr.2d 269, 41 P.3d 87 (2002) ("San Remo II"), the plaintiffs now seek to assert their federal takings claims in federal court. However, we agree with the district court that the California Supreme Court's adjudication of the state takings claims was an "equivalent determination" of the federal takings claims, and that plaintiffs are therefore barred from relitigating the takings issues by the doctrine of issue preclusion, pursuant to this circuit's precedent in Dodd v. Hood River County, 59 F.3d 852 (9th Cir.1995) ("Dodd I"), and Dodd v. Hood River County, 136 F.3d 1219 (9th Cir.1998) ("Dodd II").
 
 FACTS AND PROCEDURAL HISTORY
 
 3
 Most of the relevant factual background was recounted in our prior published decision; we repeat it here as necessary to set the stage for this appeal: I. The Statutory Framework
 
 
 4
 San Francisco has enacted several hotel conversion ordinances in order to stop the depletion of housing for the poor, elderly and disabled. The City conducted a study that revealed that between 1975 and 1979, almost 20 percent of the residential hotel units in the City were lost due to demolition and conversion, and that most of the conversion was from residential to tourist use. [Hotel Conversion Ordinance (HCO)] § 41.3(d). In 1979, the City enacted its first HCO as a temporary measure, which it later codified as a permanent ordinance in 1981.
 
 
 5
 Under the 1981 HCO, hotel units could be converted to non-residential use only if the owner obtained a permit to convert. The City granted a permit only if the property owner provided relocation assistance to hotel residents and replaced the residential hotel units being converted through one of the following methods: (1) construction of an equal number of replacement units; (2) rehabilitation of an equal number of residential hotel units; or (3) contribution of a fee to the City's Residential Hotel Preservation Fund Account in the amount of 40 percent of the construction costs of the number of units converted (the "in lieu payment"). HCO §§ 41.12 & 41.13.
 
 
 6
 The 1981 HCO defined a "residential unit" as a hotel room occupied by a permanent resident as of September 23, 1979, i.e., the 1981 HCO was an extension of the 1979 moratorium. To determine whether a unit was residential as of September 23, 1979, the City sent surveys to the operators of hotels.
 
 
 7
 In May 1990, the City repealed the 1981 HCO and enacted the 1990 HCO. This new ordinance made four changes from the old law: (1) it prohibited the summer tourist use of residential rooms; (2) it increased the in lieu payment from 40 percent to 80 percent; (3) it added the requirement that any hotel that rents rooms to tourists during the summer must rent the rooms at least 50 percent of the time to permanent residents during the winter; and (4) the new law did not provide for relief on the ground of economic hardship. To ease the effect of the new ordinance, the 1990 HCO allowed hotel owners who applied before May 12, 1990, to pay a 40 percent in lieu fee, instead of the otherwise-required 80 percent fee.
 
 
 8
 Entirely distinct from the HCOs are the City's zoning ordinances. In 1987, the City enacted the North Beach Neighborhood Commercial District zoning ordinance ("zoning law"), which requires conditional use authorization to establish a tourist hotel. Owners who establish a prior non-conforming commercial use are exempt from this requirement of obtaining a conditional use permit. The zoning law borrows the September 23, 1979, classification from the HCO in order to determine what is a residential unit. In other words, a hotel unit that had been mistakenly characterized as residential under the HCO but that in fact was operating commercially as a tourist unit in 1987 would not be said to have a prior non-conforming use under the zoning law, despite the actual use of the unit.
 
 II. The Facts
 
 9
 The plaintiffs are the owners of the San Remo Hotel, as well as the hotel itself.... [Plaintiffs] bought the San Remo Hotel in 1971, when it was zoned for commercial use and was subject to no restrictions on tourist use. [They] leased the hotel to Jean Irribarren (not a party) from 1977 to 1983. Irribarren spoke English badly, and when the 1979 survey arrived and asked him to indicate the nature of the hotel units for the new HCO, Irribarren mistakenly indicated that every single one of the hotel's 62 units was residential. [Plaintiffs] had no notice or knowledge of this survey, or of Irribarren's responses.
 
 
 10
 In 1984, after the lease to Irribarren expired, [plaintiffs] again began operating the hotel. In [their] 1984 Annual Unit Usage Report, [plaintiffs] stated that the actual use of the hotel on September 30, 1984, was still as 62 residential units and zero tourist units. [They] explain this usage report by arguing that the 1981 HCO was not burdensome to comply with, even with the residential designation. In particular, the 1981 HCO allowed for unlimited tourist use of residential rooms from May to October, which are the most profitable months for a tourist hotel.
 
 
 11
 On May 11, 1990, [plaintiffs] applied under the 1990 HCO to convert the 62 residential rooms to tourist use. The City Zoning Administrator objected on the ground that if such a conversion were granted, the hotel would then be operating in violation of the zoning laws. After all, the 1987 zoning law looked back to the September 23, 1979, survey and characterized the hotel as entirely residential. Therefore, even though the hotel had arguably been operating as a tourist hotel when the zoning law was enacted in 1987, it was not considered a prior non-conforming use. In order to satisfy the zoning law, [plaintiffs] had to obtain a conditional use permit, which [they have] never gotten.
 
 
 12
 [Plaintiffs] then filed an application for a conditional use permit, so the hotel would no longer be operating in violation of the zoning law. The Planning Department scheduled a hearing for August 20, 1992, before the City Planning Commission to decide the merits of this application. On August 19, 1992, the Planning Department concluded that the Commission lacked jurisdiction to decide what the hotel's prior zoning status had been, and the parties agreed to continue the hearing until the Zoning Administrator could make such a determination. On September 9, 1992, the Zoning Administrator formally declared that the hotel had not been zoned for commercial use. Therefore, a conditional use permit would be required.
 
 
 13
 [Plaintiffs] appealed to the Board of Permit Appeals ("BPA"), arguing that the hotel was already a permitted conditional use or a prior non-conforming use. [Plaintiffs] also argued that using the HCO to convert the hotel into a truly residential hotel would be an unconstitutional taking and a denial of equal protection. The BPA rejected this argument and held the hotel bound by the 1979 classification. It concluded that the prior disobedience to the 1987 zoning law was not a prior non-conforming use but a special exception allowed (but no longer) by the Zoning Administrator. Thus, the BPA held that [plaintiffs were] required to get a conditional use permit.
 
 
 14
 The case then went back to the Planning Commission, which on January 21, 1993, approved [plaintiffs'] application for a conditional use permit, provided: (1) [plaintiffs] paid 40 percent of the cost of replacement housing to make up for the loss of the 62 residential units; (2) [plaintiffs] offered lifetime leases to existing long-term tenants; and (3)[plaintiffs] fulfilled other minor conditions. The BPA affirmed.
 
 
 15
 On March 12, 1993, [plaintiffs] filed a petition for administrative mandamus in state court, challenging the BPA's decision that classified the hotel as residential. This mandamus action has been stayed by stipulation of the parties.
 
 
 16
 On April 19, 1993, the City's Board of Supervisors rejected [plaintiffs'] appeal of the Planning Commission's decision and upheld the conditions for the conditional use permit.
 
 
 17
 On May 4, 1993, [plaintiffs] filed this action against the City under 42 U.S.C. § 1983.
 
 
 18
 San Remo I, 145 F.3d at 1098-1100 (internal footnotes omitted).
 
 
 19
 The complaint alleged, among other things, that the 1990 HCO was a facial and as-applied taking under the Fifth Amendment. In the prior appeal, plaintiffs sought and were granted Pullman abstention on their facial takings claim. Id. at 1104-05. The panel also held that plaintiffs' as-applied challenge was not ripe, and required plaintiffs to seek compensation in state court pursuant to Williamson County Reg'l Planning Comm'n v. Hamilton Bank, 473 U.S. 172, 105 S.Ct. 3108, 87 L.Ed.2d 126 (1985). San Remo I, 145 F.3d at 1102.
 
 
 20
 The plaintiffs then proceeded to state court, seeking (1) a petition for a writ of administrative mandate to overturn the City's administrative determination that they were required to obtain a conditional use permit in order to use all the hotel rooms for tourist rental, and (2) compensation for the taking of private property without just compensation in violation of the California constitution. San Remo II, 27 Cal.4th at 649, 117 Cal.Rptr.2d 269, 41 P.3d 87. Although they could have also asserted their federal takings claims in California court, plaintiffs specifically reserved their federal claims for adjudication in federal court, pursuant to England v. La. State Bd. of Med. Exam'rs, 375 U.S. 411, 420-21, 84 S.Ct. 461, 11 L.Ed.2d 440 (1964).
 
 
 21
 The state trial court denied the writ petition and sustained a demurrer to the takings claims. The California Court of Appeal reversed, concluding that the plaintiffs had pled facts sufficient to effect a taking under the California constitution when applying the Nollan/Dolan[1] standard of scrutiny to the monetary fee. 27 Cal.4th at 657, 117 Cal.Rptr.2d 269, 41 P.3d 87. The California Supreme Court reversed, affirming the conclusion of the trial court. Id. at 679, 117 Cal.Rptr.2d 269, 41 P.3d 87.
 
 
 22
 In analyzing the state takings claim, the California Supreme Court noted that the California constitution protects a "somewhat broader range of property values" than the corresponding federal provision, but that it otherwise generally construes the clauses congruently. Id. at 664, 117 Cal.Rptr.2d 269, 41 P.3d 87. Accordingly, it relied on both state and federal takings cases to reach its decision, concluding that the heightened scrutiny applied by the United States Supreme Court in Nollan and Dolan did not apply to an ordinance of general applicability such as the one at issue, id. at 664-72, 117 Cal.Rptr.2d 269, 41 P.3d 87, and that the fee imposed by the statute bore a reasonable relationship in both intended use and amount to the perceived problems stemming from a change in the hotel's use. Id. at 672-77, 117 Cal.Rptr.2d 269, 41 P.3d 87. The California Supreme Court also rejected plaintiffs' as-applied challenge, concluding that the mitigation fee was reasonably based on the number of units that were self-reported as residential in 1979, and pointing out that the complaint contained no specific allegations regarding the hotel's use on that initial status date, only that it was used by "transient and tourist" guests since 1916. Id. at 677-79, 117 Cal.Rptr.2d 269, 41 P.3d 87.
 
 
 23
 Plaintiffs then returned to federal court, seeking to adjudicate their federal takings claims. The district court, however, reinstated its earlier ruling that the facial challenge to the HCO was barred by the statute of limitations. It also determined that the plaintiffs did not actually state a separate "as-applied" challenge to the HCO, as the alleged harm arose not from a particular application of the HCO, but from its passage. Alternatively, the district court also found that the takings claims were barred by the doctrine of issue preclusion, because the substantive California takings law was coextensive with federal takings law. Because we agree with the district court's reasoning with respect to the issue preclusion doctrine, we express no opinion on its alternate holding regarding the statute of limitations.
 
 STANDARD OF REVIEW
 
 24
 Decisions regarding issue preclusion are reviewed de novo, see Littlejohn v. United States, 321 F.3d 915, 919 (9th Cir.2003), as are questions of constitutional law. See Krug v. Lutz, 329 F.3d 692, 695 (9th Cir.2003).
 
 DISCUSSION
 
 25
 I. Applicability of Issue Preclusion where Pullman or Williamson County requires adjudication in state court
 
 
 26
 The district court concluded that plaintiffs' takings claims should be dismissed under the doctrine of issue preclusion because the takings issues were fully litigated in state court. Plaintiffs assert that there should be no issue preclusion where a plaintiff is required to litigate in state court pursuant to Pullman abstention and his federal claims have been specifically reserved under England, or where a plaintiff cannot assert a ripe takings claim in federal court until he has sought compensation in state court under Williamson County. Plaintiffs argue that "involuntary" trips to state court in these circumstances should not preclude federal adjudication of federal claims, regardless of what issues were actually litigated and decided in state court.
 
 
 27
 To begin with, we must carefully draw a distinction between claim preclusion and issue preclusion. Claim preclusion precludes relitigation of claims that were raised or should have been raised in earlier litigation. Migra v. Warren City Sch. Dist. Bd. of Educ., 465 U.S. 75, 77 n. 1, 104 S.Ct. 892, 79 L.Ed.2d 56 (1984). Issue preclusion, on the other hand, forecloses relitigation of factual or legal issues that have been actually and necessarily decided in earlier litigation. Id. The City does not dispute that the plaintiffs' England reservation was sufficient to avoid the doctrine of claim preclusion; rather, it argues that this circuit's decisions in Dodd I and Dodd II illustrate that issue preclusion may still apply even when a plaintiff has reserved federal claims pursuant to England.
 
 
 28
 The Dodds had purchased property in a Forest Use Zone in Hood River County, Oregon, intending to build a retirement home. Dodd I, 59 F.3d at 855. After their purchase, the County approved an ordinance requiring that forest dwellings be allowed in forest use zones only where "necessary and accessory" to forest use. Id. at 856. A few years later, they applied for and were denied applications for building permits, variances, zoning changes, etc. Id. They pursued various state remedies, including a state action asserting a claim under the Oregon takings clause. Id. at 857. Although not in state court involuntarily as a result of Pullman abstention, they specifically reserved their right to have any federal takings claim adjudicated in federal court. Id.
 
 
 29
 The Dodds filed a federal action as well, asserting violation of the federal takings clause; the action was stayed pending resolution of the Oregon case, which was ultimately decided adversely to the Dodds. Id. In Dodd I, we refused to apply claim preclusion to dismiss the Dodds' federal takings claim. Id. at 861-63. However, we went on to note that "the question of issue preclusion is still very much in this case." Id. at 863 (emphasis added). We explained that the lower court had not decided whether the Oregon Supreme Court's decision on the state takings claim was "an equivalent determination under the federal takings clause so as to invoke the doctrine of issue preclusion." Id. The case was remanded for further proceedings.
 
 
 30
 In the second appeal, we compared the Dodds' state law claim that they were denied a substantial beneficial use of their property with the federal takings analysis of whether an "economically viable use" of their property remained, and concluded that the issue in the two proceedings was identical, and that the other requirements for issue preclusion under Oregon law were satisfied. Dodd II, 136 F.3d at 1225. More importantly for purposes of this case, we specifically rejected the Dodds' argument that their reservation of federal takings claims under England prevented operation of the issue preclusion doctrine. Id. at 1127 ("the reservation doctrine does not enable them to avoid preclusion of issues actually litigated in the state forum"). As we noted:
 
 
 31
 To the extent that they fully litigated a necessary issue in the course of the state proceedings that is identical to an issue before the federal court, the Dodds are precluded from taking a second bite of the apple. The teachings of the Supreme Court are instructive in this regard:
 
 
 32
 There is, in short, no reason to believe that Congress intended to provide a person claiming a federal right an unrestricted opportunity to relitigate an issue already decided in state court simply because the issue arose in a state proceeding in which he would rather not have been engaged at all.
 
 
 33
 Id. at 1227-28 (quoting Allen v. McCurry, 449 U.S. 90, 104, 101 S.Ct. 411, 66 L.Ed.2d 308 (1980)).
 
 
 34
 Plaintiffs also urge us to follow the reasoning of the Second Circuit in its recent decision, Santini v. Conn. Hazardous Waste Mgmt. Serv., 342 F.3d 118 (2d Cir.2003), which held that a plaintiff who must proceed in state court to ripen his takings claim under Williamson County should not then be precluded from raising an identical claim in federal court, so long as the plaintiff reserved his federal claim under England. Id. at 128. Santini, however, expressly conflicts with another Ninth Circuit precedent, Palomar Mobilehome Park Ass'n v. City of San Marcos, 989 F.2d 362, 365 (9th Cir.1993), which held that claim preclusion can bar adjudication in federal court even where Williamson County requires a plaintiff to first seek compensation in state court. See Santini, 342 F.3d at 128 (expressing disapproval of Palomar and other cases, and deciding to "part ways with most of our sister circuits"). Of course, we are not free to simply disregard Palomar and Dodd II in favor of out-of-circuit precedent.[2]
 
 
 35
 Accordingly, we are compelled to follow Dodd I/Dodd II/Palomar and hold that the doctrine of issue preclusion can apply to bar relitigation in federal court of issues necessarily decided in state court, notwithstanding that plaintiffs must litigate in state court pursuant to Pullman and/or Williamson County. We must therefore determine whether the district court properly applied issue preclusion on the facts of this case. See Dodd I, 59 F.3d at 863.
 
 II. Issue Preclusion under California Law
 
 36
 Issue preclusion applies if the state courts would give preclusive effect to the judgment of the state court and the state and federal substantive law of takings are equivalent. Dodd I, 59 F.3d at 863; Dodd II, 136 F.3d at 1225. California courts apply the doctrine of issue preclusion (also referred to as collateral estoppel in state courts) if: (1) the issue decided in the prior case is identical with the one now presented; (2) there was a final judgment on the merits in the prior case, and (3) the party to be estopped was a party to the prior adjudication. Stolz v. Bank of America, 15 Cal.App.4th 217, 222, 19 Cal.Rptr.2d 19 (1993).[3]
 
 
 37
 As the district court concluded, the California Supreme Court's decision in San Remo II satisfies this test. The facial and as-applied takings challenges raised in state court are identical to the federal claims asserted by the plaintiffs, and are based on the same factual allegations. The California Supreme Court decision was a final judgment on the merits, and the plaintiffs were a party to the state court adjudication.
 
 
 38
 Moreover, as required by Dodd I, the determination of the state takings claims was "an equivalent determination" of the federal takings claims. 59 F.3d at 863. In San Remo II, the California Supreme Court noted that the California takings clause actually protects a broader range of property values than the federal takings clause, because the California provision includes the concept of "damage" to the property as well as "taking." 27 Cal.4th at 663-64, 117 Cal.Rptr.2d 269, 41 P.3d 87. Aside from that difference, the California high court noted that it had construed the clauses congruently. Id. at 664, 117 Cal.Rptr.2d 269, 41 P.3d 87. Thus, in reaching its decision on the merits of the plaintiffs' state takings claims, it applied "the relevant decisions of both this court and the United States Supreme Court." Id.
 
 
 39
 Plaintiffs contend, however, that California takings law is not coextensive with federal takings law, in part because the California Supreme Court failed to apply the "heightened scrutiny" of Nollan and Dolan to the monetary exactions in this case. In Nollan, landowners challenged the California Coastal Commission's decision to condition the Nollans' building permit on the grant of an easement across their beachfront. 483 U.S. at 828, 107 S.Ct. 3141. The Court noted that it had long recognized that land-use regulation does not effect a taking if it "'substantially advance[s] legitimate state interests' and does not `den[y] an owner economically viable use of his land.'" Id. at 834, 107 S.Ct. 3141 (quoting Agins v. Tiburon, 447 U.S. 255, 260, 100 S.Ct. 2138, 65 L.Ed.2d 106 (1980)). It pointed out that prior cases had not elaborated on the standards for determining what type of connection was required between the regulation and the state interest. Id. The Court went on to require an "essential nexus" between the condition and the state's purpose, and found that such a nexus was lacking in that case. Id. at 837, 107 S.Ct. 3141.
 
 
 40
 A few years later, the Court revisited the exactions issue in Dolan, a case in which the city conditioned approval of a building expansion on the dedication of land for a public greenway and pedestrian/bicycle pathway. 512 U.S. at 379-80, 114 S.Ct. 2309. The Court found that, unlike in Nollan, there was some connection between the conditions and the proposed expanded development. Id. at 387-88, 114 S.Ct. 2309. It then went on to consider the degree of connection required, and ultimately settled on an "intermediate position" similar to that employed by numerous state courts, i.e., that the municipality must show some form of "reasonable relationship" between the required dedication and the impact of the proposed development. Id. at 389-91, 114 S.Ct. 2309. The Court, however, thought the term "reasonable relationship" might be confusingly similar to the term "rational basis," and thus created a new term: "rough proportionality." Id. at 391, 114 S.Ct. 2309; see also id. ("No precise mathematical calculation is required, but the city must make some sort of individualized determination that the required dedication is related both in nature and extent to the impact of the proposed development.").
 
 
 41
 Plaintiffs argue the heightened "rough proportionality" review of Dolan should be applied to both their facial and as-applied takings claims. The California Supreme Court carefully examined this contention and concluded that Nollan/Dolan does not apply to generally applicable legislation such as the ordinance in this case, but only where the government exercises discretionary powers, and acts more adjudicatively than legislatively. 27 Cal.4th at 664-72, 117 Cal.Rptr.2d 269, 41 P.3d 87. The Court reasoned that heightened scrutiny is necessary when the city's action is isolated and discretionary, because there is more danger that the city will improperly leverage its power against a single landowner. Id. at 666-67, 117 Cal.Rptr.2d 269, 41 P.3d 87. When the city acts legislatively, however, and enacts an ordinance that applies a fee across the board according to a set formula, the danger is diminished, because there is no discretionary application and because the group affected can use the elective processes to petition for change in the law. Id. at 668-72, 117 Cal.Rptr.2d 269, 41 P.3d 87. The California Supreme Court thus instead analyzed whether the HCO bore a reasonable relationship to the loss of housing, which it considered a legitimate goal for the common good, and concluded that there was such a relationship. See id. at 673-678, 117 Cal.Rptr.2d 269, 41 P.3d 87.
 
 
 42
 The California Supreme Court's analysis was thus equivalent to the approach taken in this circuit, which has also rejected the applicability of Nollan/ Dolan to monetary exactions such as the ones at issue here. For example, in Commercial Builders of N. Cal. v. Sacramento, 941 F.2d 872 (9th Cir.1991), cert. denied, 504 U.S. 931, 112 S.Ct. 1997, 118 L.Ed.2d 593 (1992), the City of Sacramento found that nonresidential development created a need for low income housing in the city, and enacted an ordinance which conditioned the issuance of nonresidential building permits on the payment of a fee, calculated according to a formula, into a fund designed to assist in financing low-income housing. Id. at 873. We affirmed, finding the ordinance was reasonably related to legitimate public purposes. Id. We also specifically rejected the contention that Nollan materially changed the level of scrutiny to be applied to the ordinance. Id. at 874.[4]
 
 
 43
 Plaintiffs argue Commercial Builders should be disregarded because it was a pre-Dolan decision. However, Dolan simply refined the test articulated in Nollan, and, in any event, post-Dolan, this court again rejected the application of the "rough proportionality" requirement to a monetary exaction. In Garneau v. City of Seattle, 147 F.3d 802 (9th Cir.1998), a divided panel upheld a city ordinance that required landlords to pay a $1,000 per tenant relocation assistance fee to low income tenants displaced by the change of use or substantial rehabilitation of a property. Judge Brunetti concluded that Dolan and Nollan provided "no support" for the plaintiffs' claims and specifically noted that Dolan's "rough proportionality" test was necessarily inapplicable to facial takings challenges. Id. at 808, 811.[5]
 
 
 44
 Furthermore, the Supreme Court itself has limited the reach of Nollan/Dolan, explaining that "we have not extended the rough-proportionality test of Dolan beyond the special context of exactions — land-use decisions conditioning approval of development on the dedication of property to public use." City of Monterey v. Del Monte Dunes at Monterey, Ltd., 526 U.S. 687, 702, 119 S.Ct. 1624, 143 L.Ed.2d 882 (1999) (emphasis added). In Del Monte Dunes, the Court approved of jury instructions based on the more classic "substantially advances" takings formulation, which asked the jury to evaluate whether or not a city's actions in denying a building permit on a specific piece of property were "reasonably related to legitimate public interests." Id. at 704, 119 S.Ct. 1624; see also Hotel & Motel Ass'n. v. City of Oakland, 344 F.3d 959, 968 (9th Cir.2003) (holding ordinance substantially advanced a legitimate state interest because a reasonable relationship existed between the regulation and the public purpose it was meant to serve); Chevron USA, Inc. v. Cayetano, 224 F.3d 1030, 1041 (9th Cir.2000) (noting in rent control takings case that a "challenged regulatory action `substantially advances' its interest if it bears a reasonable relationship to that interest" and that Del Monte Dunes "teaches that a reasonable relationship does not depend on the State's action being roughly proportional to its asserted interests").
 
 
 45
 The California Supreme Court applied the "reasonable relationship" test to the plaintiffs' facial and as-applied takings claims. San Remo II, 27 Cal.4th at 672-79, 117 Cal.Rptr.2d 269, 41 P.3d 87. In light of Del Monte Dunes and this circuit's precedent, this was an "equivalent determination" of such claims under the federal takings clause. See Dodd I, 59 F.3d at 863. Accordingly, the district court correctly concluded that federal takings claims are barred from litigation under the doctrine of issue preclusion.
 
 
 46
 AFFIRMED.
 
 
 
 Notes:
 
 
 [1]
 Nollan v. Cal. Coastal Comm'n, 483 U.S. 825, 107 S.Ct. 3141, 97 L.Ed.2d 677 (1987), and Dolan v. City of Tigard, 512 U.S. 374, 114 S.Ct. 2309, 129 L.Ed.2d 304 (1994).
 
 
 [2]
 Recognizing this, plaintiffs argue thatPalomar/Williamson County should not be followed because of the Supreme Court's intervening decision in City of Chicago v. Int'l Coll. of Surgeons, 522 U.S. 156, 118 S.Ct. 523, 139 L.Ed.2d 525 (1997), in which the Court held that defendants can remove takings cases to federal court even though the removal statute only allows removal of cases that could have been brought originally in federal court. Id. at 163-65, 118 S.Ct. 523. College of Surgeons, however, does not even cite Williamson County, much less overrule it. See Shalala v. Ill. Council on Long Term Care, Inc., 529 U.S. 1, 18, 120 S.Ct. 1084, 146 L.Ed.2d 1 (2000) ("This Court does not normally overturn, or so dramatically limit earlier authority sub silentio."). Other circuits have also rejected the argument that College of Surgeons modified the ripeness requirements of Williamson County. Kottschade v. City of Rochester, 319 F.3d 1038, 1040-41 (8th Cir.), cert. denied, 540 U.S. 825, 124 S.Ct. 178, 157 L.Ed.2d 46 (2003); Santini, 342 F.3d at 129 n. 6.
 
 
 [3]
 Plaintiffs argue that issue preclusion in California applies only to questions of fact that were decided in the earlier proceeding, and not to issues of law, citingAlbertson v. Raboff, 46 Cal.2d 375, 384-85, 295 P.2d 405 (1956). Because the California Supreme Court merely sustained the demurrer, and did not include any factual determination, plaintiffs argue that it should not be given any preclusive effect. Albertson, however, merely held that only those facts necessary to the prior judgment are considered res judicata in a second action. California courts recognize that issue preclusion can apply to questions of law, so long as the application of the doctrine would not work injustice. See, e.g., Rutherford v. State, 188 Cal.App.3d 1267, 1283, 233 Cal.Rptr. 781 (1987); United States Fire Ins. Co. v. Johansen, 270 Cal.App.2d 824, 834-35, 76 Cal.Rptr. 174 (1969); Pacific Maritime Assn. v. California Unemp. Ins. Appeals Bd., 236 Cal.App.2d 325, 333, 45 Cal.Rptr. 892 (1965).
 
 
 [4]
 The court went on to say that in any event, there was a sufficient "nexus" between the fee provision at issue and the burdens caused by commercial development to pass constitutional musterId. at 875, 45 Cal.Rptr. 892.
 
 
 [5]
 District Judge Williams concurred in the result, but would have held that the takings clause did not apply to monetary fees, and that the claim should more appropriately be characterized as a due process violationId. at 817-21, 45 Cal.Rptr. 892.