**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

EMPRESS LLC, a California
Limited Liability Company; VIJAY
PATEL; RAMILABEN PATEL,
   *Plaintiffs-Appellants,*

   v.

CITY AND COUNTY OF SAN
FRANCISCO; SAN FRANCISCO
PLANNING DEPARTMENT; LAWRENCE
BADINER, as San Francisco Zoning
Administrator; RANDALL SHAW, as
Executive Director of the
Tenderloin Housing Clinic, Inc.;
SAN FRANCISCO BOARD OF APPEALS;
TENDERLOIN HOUSING CLINIC INC., a
California nonprofit corporation;
SAN FRANCISCO ZONING
ADMINISTRATOR,
   *Defendants-Appellees.*

No. 03-16706

D.C. No.
CV-02-01999-PJH

OPINION

Appeal from the United States District Court
for the Northern District of California
Phyllis J. Hamilton, District Judge, Presiding

Argued and Submitted
March 15, 2005—San Francisco, California

Filed August 18, 2005

Before: Sidney R. Thomas and Raymond C. Fisher,
Circuit Judges, and James L. Robart,* District Judge.

*The Honorable James L. Robart, United States District Judge for the
Western District of Washington, sitting by designation.

10945

Opinion by Judge Thomas

**COUNSEL**

Andrew M. Zacks (Argued) and James B. Kraus (On the Briefs), San Francisco, California, for the plaintiffs-appellants.

Stephen L. Collier, Tenderloin Housing Clinic, Inc., San Francisco, California, for the defendants-appellees.

**OPINION**

THOMAS, Circuit Judge:

The owners of the Empress Hotel brought this action against the Executive Director of the Tenderloin Housing Clinic, claiming that the City of San Francisco unlawfully del-

egated zoning decisions to him by taking official actions consistent with his requests on all zoning petitions affecting San Francisco's Tenderloin area. We conclude that the action is precluded by the Noerr-Pennington doctrine and affirm the judgment of the district court.

I

The Empress Hotel is located in San Francisco's Tenderloin district, an area which in the past has conjured up images of salaciousness rather than steak. It has also recently been the subject of urban renewal efforts. Several decades ago, the City of San Francisco designated the Empress as a mixed-use hotel and issued a Certificate of Use that allowed the hotel to operate with 58 tourist rooms and 30 residential rooms. A Certificate of Use remains valid until revoked, but requires annual compliance with the City's Hotel Conversion Ordinance, which was designed to stop the depletion of housing for the poor, elderly and disabled after studies conducted by the City revealed that a substantial number of residential hotel units in the City had been converted from residential to tourist use. *San Remo Hotel, L.P. v. San Francisco City & County*, 364 F.3d 1088, 1091 (9th Cir. 2004), *aff'd*, 125 S. Ct. 2491 (2005).

In the early 1980's, the Empress Hotel fell into disrepair, and the City issued a number of abatement orders in an attempt to remedy the conditions. In response, Vijay Patel's parents, who owned the Empress at the time, evicted its residents and closed the hotel. Some years later, Vijay and Ramilaben Patel purchased the Empress Hotel from Vijay Patel's parents and proceeded to redevelop the hotel, spending approximately $1.5 million in the process. As part of the redevelopment, the Patels applied for and received permits from the City authorizing the use of the Empress as a tourist hotel.

The Tenderloin Housing Clinic, Inc. is a California nonprofit corporation that seeks to preserve low-income housing

in the Tenderloin district. Upon learning of the Patels' efforts to redevelop the Empress Hotel, Tenderloin Housing Clinic Executive Director Randall Shaw wrote a letter to San Francisco Zoning Administrator Lawrence Badiner requesting that he make a zoning determination regarding the Empress. Shaw contended in his letter that the Empress had been vacated and the authorized tourist use abandoned. As a result, Shaw argued, the entire hotel had reverted to purely residential use under restrictions of the North of Market Residential Special Use District, which had been created the year the Empress was shuttered. After receiving Shaw's letter, Badiner initiated an investigation and eventually concluded that the tourist use of the Empress Hotel had been discontinued for a continuous period of at least three years and therefore could not be reestablished except in compliance with the present applicable City codes. The Patels unsuccessfully appealed Badiner's zoning determination to the San Francisco Board of Appeals.

After rehearing was denied by the Board of Appeals, the Patels filed this 42 U.S.C. § 1983 action on behalf of themselves and Empress LLC (collectively "the Patels"), alleging that the government and individual governmental officials had unlawfully delegated zoning decisions to Shaw. The district court dismissed the claims against all defendants except Shaw. Initially, the district court, relying on *Branch v. Tunnel*, 937 F.2d 1382 (9th Cir. 1991), applied a heightened pleading standard to the Patels' constitutional tort claim and dismissed the complaint with leave to amend. After the Patels filed their second amended complaint, the district court granted Shaw's motion to dismiss with prejudice on the grounds that Shaw's activities were protected under the Noerr-Pennington doctrine and that the Patels had failed to allege sufficient facts demonstrating that Shaw's activities were exempt from this protection. Although noting that in the time since the dismissal of the Patels' first complaint, we had decided in *Galbraith v. County of Santa Clara*, 307 F.3d 1119, 1123-26 (9th Cir. 2002), to overrule *Branch* and eliminate the heightened pleading requirement for constitutional tort claims, the district

court proceeded to apply a heightened pleading standard because the Patels' claim involved the right to petition governmental bodies immune from liability under the Noerr-Pennington doctrine. The district court also granted in part Shaw's motion for attorneys' fees under 42 U.S.C. § 1988, awarding Shaw $13,109. This timely appeal followed.

## II

**[1]** The district court erred in applying a heightened pleading standard to the Patels' claims. In *Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit*, 507 U.S. 163 (1993), the Supreme Court rejected the application of a heightened pleading standard in § 1983 actions alleging municipal liability. *Id.* at 168. The Supreme Court stated that the common-law-developed heightened pleading standard, which required a plaintiff's complaint to state with factual detail and particularity the basis for the claim, could not be reconciled with the Federal Rules' liberal system of notice pleading.[1] *Id.* The Court stated that heightened pleading standards should only be applied when required by the Federal Rules. *Id.* at 168-69.

**[2]** Likewise, in *Crawford-El v. Britton*, 523 U.S. 574 (1998), the Court concluded that a heightened pleading standard was inapplicable to constitutional claims brought against

---

[1]The notice pleading standard is articulated in Fed. R. Civ. P. 8(a), which provides as follows:

> Claims for Relief. A pleading which sets forth a claim for relief, whether an original claim, counterclaim, cross-claim, or third-party claim, shall contain (1) a short and plain statement of the grounds upon which the court's jurisdiction depends, unless the court already has jurisdiction and the claim needs no new grounds of jurisdiction to support it, (2) a short and plain statement of the claim showing that the pleader is entitled to relief, and (3) a demand for judgment for the relief the pleader seeks. Relief in the alternative or of several different types may be demanded.

individual defendants in which improper motive is a necessary element. *Id.* at 595-96. The Court disapproved of the heightened pleading standard adopted and imposed by the Fifth Circuit, stressing that the Court's cases "demonstrate that questions regarding pleading, discovery, and summary judgment are most frequently and effectively resolved either by the rulemaking process or the legislative process." *Id.* at 595 (citing *Leatherman*, 507 U.S. at 168-69). As we noted in *Galbraith*, "[i]n light of *Crawford-El*, nearly all of the circuits have now disapproved any heightened pleading standard in cases other than those governed by Rule 9(b)."**[2]** 307 F.3d at 1125.

**[3]** Most recently, in *Swierkiewicz v. Sorema, N.A.*, 534 U.S. 506 (2002), the Supreme Court reversed the dismissal of a complaint that had been based on a heightened pleading standard applied by the Second Circuit in employment discrimination cases, *id.* at 514-15, and, in doing so, reiterated its position as set forth in *Leatherman*, *id.* at 512-15. The Court stated that "[a] requirement of greater specificity for particular claims is a result that 'must be obtained by the process of amending the Federal Rules, and not by judicial interpretation.' " *Id.* at 515 (quoting *Leatherman*, 507 U.S. at 168).

**[4]** Although in *Galbraith* we held that a heightened pleading standard should not apply to constitutional tort claims in which improper motive is an element, we suggested that common-law-developed heightened pleading standards do not survive *Leatherman*, *Crawford-El*, and *Swierkiewicz*. 307 F.3d at 1124-26; *see also Thomas v. Fry's Electronics, Inc.*, 400 F.3d 1206, 1207 (9th Cir. 2005) ("*Swierkiewicz* merely stands for the proposition that federal courts may not impose a heightened pleading requirement in derogation of federal

---

**[2]**Fed. R. Civ. P. 9(b) provides: "In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and other condition of mind of a person may be averred generally."

notice pleading rules."). Although we did not reach the question of whether a heightened pleading standard should be applied in other contexts in *Galbraith*, the logical conclusion of *Leatherman*, *Crawford-El*, and *Swierkiewicz* dictates that a heightened pleading standard should only be applied when the Federal Rules of Civil Procedure so require. Because the Rules do not require a heightened pleading standard for the claims advanced by the Patels, the district court erred in applying such a standard in considering the Rule 12(b)(6) motion to dismiss their complaint.

### III

Even though the district court should have applied a notice pleading standard to the complaint pursuant to Fed. R. Civ. P. 8(a), the district court correctly granted the motion to dismiss because the Patels' complaint cannot survive application of the Noerr-Pennington doctrine even under notice pleading standards.[3]

[5] "The Supreme Court has described the right to petition as 'among the most precious of the liberties safeguarded by the Bill of Rights' and 'intimately connected, both in origin and in purpose, with other First Amendment rights of free speech and free press.' " *White v. Lee*, 227 F.3d 1214, 1231 (9th Cir. 2000) (quoting *United Mine Workers of America, Dist. 12 v. Illinois State Bar Ass'n*, 389 U.S. 217, 222 (1967)). Under the Noerr-Pennington doctrine, those who petition all departments of the government for redress are generally immune from liability. *Manistee Town Ctr. v. City of Glendale*, 227 F.3d 1090, 1092 (9th Cir. 2000). Although the Noerr-Pennington doctrine originally immunized individuals

---

[3]We review a dismissal for failure to state a claim under Fed. R. Civ. P. 12(b)(6) de novo. *McGary v. City of Portland*, 386 F.3d 1259, 1261 (9th Cir. 2004). "Dismissal of the complaint is appropriate only if it appears beyond doubt that the plaintiff[s] can prove no set of facts in support of the claim which would entitle [them] to relief." *Id.*

and entities from antitrust liability, Noerr-Pennington immu-
nity now applies to claims under § 1983 that are based on the
petitioning of public authorities. *Id.* "Noerr-Pennington is a
label for a form of First Amendment protection; to say that
one does not have Noerr-Pennington immunity is to conclude
that one's petitioning activity is unprotected by the First
Amendment." *White*, 227 F.3d at 1231 (footnote omitted).

Shaw contends that his letter to Badiner requesting a zon-
ing determination and the enforcement of zoning laws in
regards to the Empress Hotel, as well as his alleged conversa-
tions with Badiner, are petitioning activities protected under
the Noerr-Pennington doctrine. The Patels assert that Shaw's
conduct was, in actuality, "a wink" telling Badiner to make a
certain zoning determination and enforce the zoning laws
against the Patels. The Patels claim that because Shaw's activ-
ities constitute a part of a conspiracy to exercise an unlawful
delegation of power, they are not immunized under the sham
exception to the Noerr-Pennington doctrine. *See Kottle v.
Northwest Kidney Ctrs.*, 146 F.3d 1056, 1060-62 (9th Cir.
1998) (discussing the sham exception to the Noerr-
Pennington doctrine).

**[6]** The Patels' complaint does not allege that Shaw used
government processes, as opposed to the outcome of those
processes, as a mechanism to injure the Patels, and that there-
fore his petitioning activity falls under the sham exception to
the Noerr-Pennington doctrine. *See Manistee*, 227 F.3d at
1094-95. As such, no matter what Shaw's motives were, his
petitioning activity as alleged in the Patels' complaint is
immunized under the Noerr-Pennington doctrine. *Id.* at 1095
n.4; *Boone v. Redevelopment Agency of the City of San Jose*,
841 F.2d 886, 894-95 (9th Cir. 1988) (stating that private
meetings between government officials and individuals seek-
ing to lobby the government is a form of advocacy protected
under Noerr-Pennington); *United Mine Workers of America v.
Pennington*, 381 U.S. 657, 669 (1965) (stating that illegal pur-

poses and motivations behind petitioning do not illegalize the petitioning conduct).

**[7]** Furthermore, there is no "conspiracy" exception to the Noerr-Pennington doctrine that applies when government officials conspire with a private party to employ government action as a means of depriving other parties of their federal constitutional or statutory rights. *See City of Columbia v. Omni Outdoor Adver. Inc.*, 499 U.S. 365, 382-83 (1991). In such circumstances, a remedy lies only against the conspiring government officials, not against the private citizens. Therefore, the Patels' allegation that Shaw conspired with the City to have the City unlawfully delegate its authority to him does not remove Shaw's petitioning activity from protection under the Noerr-Pennington doctrine.

**[8]** Thus, based on the Patels' pleadings, it appears beyond a doubt that they can prove no facts demonstrating that Shaw's activities fall under the sham exception to the Noerr-Pennington doctrine and are therefore not immunized from liability. Although the district court should not have applied a heightened pleading standard, even under the pleading standard articulated in Fed. R. Civ. P. 8(a), the Patels have failed to state a claim upon which relief can be granted.

## IV

**[9]** The district court's determination that it may, under 42 U.S.C. § 1988, award attorneys' fees to Shaw, the prevailing defendant in a civil rights case, was necessarily based on its erroneous application of the heightened pleading standard, rendering the district court's determination an abuse of discretion.[4] Under the notice pleading standard, the Patels' claims were not "unreasonable, frivolous, meritless, or vexatious,"

---

[4]We review the district court's award of attorneys' fees for an abuse of discretion. *Horphag Research Ltd. v Pellegrini*, 337 F.3d 1036, 1042 (9th Cir. 2003).

*Margolis v. Ryan*, 140 F.3d 850, 854 (9th Cir. 1998) (quoting *Christianburg Garment Co. v. EEOC*, 434 U.S. 412, 421 (1978)) (internal quotation marks omitted). Therefore, we reverse the district court's award of attorneys' fees to Shaw.

V

In sum, we affirm the judgment of the district court dismissing the claims against Shaw, but reverse the award of attorney fees.

**AFFIRMED IN PART; REVERSED IN PART**