48 F.3d 1223
NOTICE: Eighth Circuit Rule 28A(k) governs citation of unpublished opinions and provides that no party may cite an opinion not intended for publication unless the cases are related by identity between the parties or the causes of action.
 William FLEMING, Appellant,
v.
GREATER ST. LOUIS AREA MAJOR CASE SQUAD; City of Dellwood;
City of Jennings; City of Florissant; Dan
Chapman; Robert Lowery; Harry Slaten;
Michael Yarborough; and
Dennis Cordia, Appellees.
 No. 94-2051EM.
 United States Court of Appeals,
Eighth Circuit.
 Submitted: Nov. 17, 1994.
Filed: Feb. 14, 1995.
 
 Before RICHARD S. ARNOLD, Chief Judge, BRIGHT, Senior Circuit Judge, and McMILLIAN, Circuit Judge.
 PER CURIAM.
 
 
 1
 William Fleming, indicted for the murder of a police officer, was imprisoned for more than seven months in 1987. After his release he filed a complaint under several civil-rights statutes to redress his wrongful incarceration. The District Court[1] granted the defendants' motions for summary judgment, and Fleming appeals. We affirm.
 
 I.
 
 2
 Sergeant Koeller, a City of Jennings police officer, was shot in the neck and killed while investigating a burglary. Defendant Michael Yarborough and another police officer found his body lying beside his police car. Additional police officers soon arrived, and a search of the area for witnesses and suspects began. Yarborough participated in the search of the immediate area and later filed a report.
 
 
 3
 The next day, the Jennings Police Department asked the St. Louis Area Major Case Squad to begin an investigation of the murder. Although there is some dispute as to who in the Jennings Police Department requested the assistance of MCS, defendant Robert Lowery, MCS Chairman of the Board, states that defendant Harry Slaten made the request. Lowery consulted with the three-member MCS Board of Directors and ordered the activation of the MCS. The MCS was composed of police departments from the cities of Dellwood, Jennings, and Florissant. Once the MCS began investigating, the Jennings Police Department stopped its investigation.
 
 
 4
 Defendant Colonel Dan Chapman of the Dellwood Police Department was the MCS commander for the case, and defendant Officer Dennis Cordia was the MCS report officer. The MCS investigation lasted fifteen days and included interviewing possible witnesses and conducting polygraph examinations.
 
 
 5
 Following the MCS report to the St. Louis County Police Department, Lieutenant Jack Oliver of MCS applied for a warrant for plaintiff's arrest from the Chief Warrant Officer. Cordia, acting as custodian of the MCS records, went with Oliver. The Warrant Officer granted the request for the warrant, and Fleming was arrested. The MCS file for this investigation was then closed, and the Jennings Police Department resumed its supervision of the case.
 
 
 6
 On February 29, 1987, William Fleming was indicted for murder in the first degree by the Grand Jury of St. Louis County. Following a bail hearing, plaintiff remained incarcerated until September 1987, when charges against him were dropped, and he was released. Subsequently, two other men have been found guilty of the murder of Sergeant Koeller.
 
 
 7
 Fleming brought a complaint against the three cities and five other defendants under 42 U.S.C. Secs. 1981, 1983, 1985, and 1988 for violations of his Fourth, Fifth, Eighth, and Fourteenth Amendment rights. The defendants moved for summary judgment; the District Court granted the motions and dismissed the claims. On appeal, Fleming alleges nine grounds of reversible error by the District Court. We affirm.
 
 II.
 
 8
 Our review of an order granting summary judgment is governed by the same standard the District Court employed-whether the record, viewed in the light most favorable to the non-moving party, shows that no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Save Our Health Organization v. Recomp of Minnesota, Inc., 37 F.3d 1334 (8th Cir. 1994). If the moving party makes an initial showing that no question of fact exists, the non-moving party must then point out specific facts showing that there is sufficient evidence which would allow a jury to return a verdict for it. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). If the non-moving party cannot provide such facts, then an order granting summary judgment is appropriate and will stand.
 
 
 9
 None of Fleming's allegations convinces this Court that the District Court erred in granting summary judgment. Fleming proffers no factual evidence to support any of his claims that the cities acted in a discriminatory manner against him or against the black community. His allegations of discriminatory actions and conspiracies are vague, conclusory, and based on hearsay. Such statements cannot rebut the evidence that the moving parties submitted to show that the cities did not possess a policy of discrimination against the black community, or a custom of permitting or authorizing the procuring of false testimony, or a practice of arresting individuals without cause.
 
 
 10
 As to the allegations against the individual police officers involved in this investigation, Fleming presents no evidence to prove that the defendants caused the production of improper evidence or that any of the defendants participated in the investigation in anything other than a limited manner. The plaintiff must show at least a causal connection between the misconduct complained of and the official sued. Harris v. Pirch, 677 F.2d 681, 685 (8th Cir. 1982). As we review the actions of each defendant in turn, we find that Fleming has not shown the necessary causal connection for liability to attach to any of the defendants.
 
 
 11
 Yarborough, the first officer to arrive at the scene of the murder, secured the area, investigated the scene, and filed a report. His involvement with the case stopped after that. The plaintiff argues these actions are enough for this Court to find that Yarborough's preliminary investigation and subsequent report denied Fleming his civil rights and also show that he acted in a conspiracy with the other officers to deprive Fleming of those rights. We cannot find that such minor participation with the investigation is enough to establish a link between Yarborough and the alleged mistreatment of Fleming.
 
 
 12
 The only fact Fleming cites against Slaten is that Slaten contacted the MCS Board to request its investigation of the murder of Sergeant Koeller. These actions alone are not enough to find liability, especially considering that it is up to the MCS Board to decide whether it would investigate or not. Fleming attempts to use Slaten's position as police chief for the City of Jennings to place liability on him. Although Slaten would have seen reports from the investigation, he was not directly involved with the investigation or indictment of Fleming, and he cannot be found liable under the doctrine of respondeat superior. Wilson v. City of North Little Rock, 801 F.2d 316 (8th Cir. 1986).
 
 
 13
 Lowery is the Chief of Police for the City of Florissant and Chairman of the Board of Directors of the MCS. He was part of the Board which decided to activate the MCS, but once the MCS was activated, the investigation was turned over to MCS Commander Dan Chapman, and Lowery had nothing further to do with this investigation. Lowery's involvement with the arrest of Fleming is minimal and does not reveal any direct responsibility for the alleged improper action.
 
 
 14
 The evidence presented to the District Court about Chapman was that he signed a warrant application and presented evidence to the magistrate judge for Fleming's arrest. There is nothing that shows that Chapman knew that any of the evidence was fabricated or coerced; he did not gather the evidence or interview any of the witnesses. His responsibility was to oversee the investigation. Except for Fleming's speculations, nothing shows that Chapman had any knowledge that the investigation was handled in bad faith. As noted above, an action against police supervisory officers cannot be based upon the theory of respondeat superior. Monell v. Department of Social Services, 436 U.S. 658, 690-94 (1978). For liability to attach, the supervising police officer must be directly responsible for the alleged misconduct. Pirch, 677 F.2d at 685. There is no evidence that Chapman had any direct responsibility for any of the alleged misconduct. Therefore, summary judgment was proper.
 
 
 15
 The remaining defendant is Dennis Cordia, the records clerk. His only involvement in this case was ministerial; he kept the papers generated by the investigation in order. His involvement is not enough to attach any kind of liability to him.
 
 
 16
 In light of the facts before this Court, we do not see that any of the defendants acted in bad faith or that they took any actions with deliberate disregard for Fleming's constitutional rights. Not one of these defendants has enough personal involvement in the investigation of this case to allow a jury to return a verdict for the plaintiff.
 
 
 17
 Fleming also alleges that he was falsely arrested. He does not, however, offer any real evidence that the officers did not have a good-faith basis for his arrest. His arrest followed an indictment by a grand jury based on evidence the grand jury felt was worthy of belief. Fleming offers nothing but speculation to support the notion that anyone acted improperly in obtaining or presenting evidence that the grand jury heard. This Court will not look behind a grand jury's finding that probable cause exists without something more than conjecture. The grand jury indictment serves to break a chain of causation between an alleged false arrest and a violation of constitutional rights.
 
 
 18
 We affirm the District Court's grant of summary judgment.
 
 
 19
 It is so ordered.
 
 
 
 [1]
 The Honorable Stephen N. Limbaugh, United States District Judge for the Eastern District of Missouri