# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

Nos. 05-4140/06-1099

_____

Eric Clemmons,                                        *
                                                      *
    Appellee/Cross-Appellant,        *
                                                      * Appeals from the United States
    v.                               * District Court for the
                                                      * Western District of Missouri.
William Armontrout, Warden;                           *
George Brooks; Alonzo Gross;                          *
Arthur Dearixon; Thomas Steigerwald;                  *
Donald Cline; Larry Henson, Deputy                    *
Warden; Bill Rutledge; Robert Acree;                  *
James Eberle;                                         *
                                                      *
    Cross-Appellees,                 *
                                                      *
Estate of George Brooks,                              *
                                                      *
    Appellant/Cross-Appellee.        *

_____

Submitted: November 17, 2006
Filed:  February 12, 2007

_____

Before RILEY, HANSEN, and SMITH, Circuit Judges.

_____

SMITH, Circuit Judge.

    Eric Clemmons, an inmate incarcerated at the Missouri State Penitentiary ("MSP"), sued MSP Investigator George Brooks, now deceased, Warden William

Armontrout, and Corrections Supervisor Alonzo Gross (collectively referred to as "appellants") under 42 U.S.C. § 1983. Clemmons alleged that appellants' intentional or reckless failure to disclose or investigate exculpatory leads or exonerating information deprived Clemmons of his liberty interest in a fair trial. Clemmons contends that their acts caused him to be wrongfully convicted for murder and placed on death row for 14 years. The district court granted summary judgment to Warden Armontrout and Captain Gross, concluding that neither of them was personally involved in the alleged deprivation of Clemmons's constitutional rights, but denied Investigator Brooks qualified immunity. We reverse the district court's denial of qualified immunity to Investigator Brooks and affirm the district court's grant of summary judgment to Warden Armontrout and Captain Gross.

## I. *Background*

Clemmons is an inmate in the custody of the Missouri Department of Corrections.[1] While Clemmons was incarcerated at the MSP, someone stabbed fellow inmate Henry Johnson three times, leading to his death. When the assault occurred, Corrections Officer Thomas Steigerwald called for assistance, and Captain Gross responded to the call. Officer Steigerwald claimed to have witnessed the stabbing and identified Clemmons as the perpetrator. Officer Steigerwald and Captain Gross took Clemmons into custody. The officers noticed bloodstains on Clemmons's sweatshirt and tennis shoes.

After taking Clemmons into custody, Captain Gross returned to the scene of the stabbing and ordered corrections officers to search for the assailant's weapon. No weapon, however, was ever located. Thereafter, Captain Gross supervised a preliminary investigation into Johnson's stabbing until the MSP investigator arrived to conduct an investigation. In the meantime, inmate Dwight Clark approached

---

[1]In 1983, Clemmons was convicted of capital murder and assault and sentenced to life without the possibility of parole for 50 years.

Captain Gross and told him that he had witnessed two men assaulting Johnson. He described both assailants as being black, stated his belief that one of the inmates was Fred Bagby, and explained that he only knew the second inmate by sight.

Captain Gross never interviewed Fred Bagby or searched his cell; however, he did review the out-count list and concluded that because Bagby was not on the out-count list[2], Clark's statement was not credible. He admitted, however, that there would have been more than one out-count list, meaning that Bagby could have been listed on another out-count list that he did not check. Additionally, he conceded that an inmate could be in the prison yard without being listed on the out-count list.

After receiving and investigating Clark's statement, Captain Gross prepared an Inter-Office Communication ("IOC") memorandum to Investigator Brooks—the MSP investigator assigned to the murder investigation—which outlined Captain Gross's investigation and his conversation with Clark. In the IOC, Captain Gross noted his misgivings about Clark's statement, concluding that "[w]hen questioned in detail Clark did not make sense and further investigation reflects that Clark's statement is untrue." Warden Armontrout, Deputy Warden Donald Cline, Superintendent Robert Acree, and Major James Eberle were forwarded a copy of the IOC.

Investigator Brooks never interviewed Clark or Bagby as part of his investigation. After he completed his investigation, he forwarded his investigation file to Warden Armontrout, who then forwarded the file to the Cole County Prosecuting Attorney's Office for review. The file forwarded to the prosecuting attorney did not contain the IOC detailing Clark's statements. The prosecuting attorney charged Clemmons with the murder of Johnson. Clemmons was subsequently convicted of the murder in 1987 and sentenced to death. Clemmons exhausted his state appeals.

---

[2]The "out-count" list sets forth the names of inmates who have permission to be out of their cells. *Douglas v. Clark*, 993 F.2d 1549, 1993 WL 137718, at *3 (7th Cir. Apr. 30, 1993) (unpublished).

In 1997, Clemmons filed a writ of habeas corpus, alleging that exculpatory evidence—the IOC—"was withheld from him prior to his trial in violation of *Brady v. Maryland*, 373 U.S. 83, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963)." *Clemmons v. Delo*, 124 F.3d 944, 947 (8th Cir. 1997). We granted Clemmons the writ, concluding that "[w]hether framed as an ineffective assistance of counsel claim or as a *Brady* claim, Clemmons's claim undeniably states a constitutional violation." *Id.* at 949. "We [could not] say with confidence that the jury would have reached the same verdict when presented with an eyewitness [Clark] who accused a different inmate [Bagby] of the crime within an hour of the murder, the very same inmate that three other witnesses had also accused of the crime."[3] *Id.* at 951.

The State of Missouri then retried Clemmons, and, on February 18, 2000, a jury acquitted him of the murder of Johnson. Approximately three years later, Clemmons filed the instant lawsuit under 42 U.S.C. § 1983, alleging that he was deprived of his liberty interest in a fair trial due to appellants' intentional or reckless failure to disclose or investigate exculpatory leads or exonerating information.

## II. *Discussion*

The Estate of Investigator Brooks appeals, arguing that the district court erred in denying Investigator Brooks qualified immunity because Clemmons failed to show that Brooks intentionally or recklessly failed to investigate leads or produce exculpatory information in violation of Clemmons's due process rights. Clemmons

---

[3]At trial, Clemmons presented the testimony of three fellow inmates who identified Bagby as Johnson's killer; however, in each case, the witness had not come forward until Bagby had died. The prosecution impeached the testimony of Clemmons's witnesses by asserting that Bagby was conveniently dead at the time that they came forward. Without knowledge of the IOC, Clemmons was unable to rehabilitate his witnesses. At the time Clark accused Bagby of Johnson's murder, Bagby was alive; therefore, Clark identifying Bagby as the killer an hour after the murder would have supported the three inmates' testimony. In addition, Clemmons could have called Clark as a witness. *Clemmons*, 124 F.3d at 950–51.

cross-appeals, asserting that the district court erred in granting summary judgment to Warden Armontrout and Captain Gross because a genuine issue of material fact remains as to their "personal involvement" in the investigation of Johnson's murder.

A. *Qualified Immunity*

We review de novo the district court's denial of qualified immunity to Investigator Brooks. *McClendon v. Story County Sheriff's Office*, 403 F.3d 510, 515 (8th Cir. 2005).

To determine whether an official is entitled to qualified immunity, we engage in a two-part analysis. The "threshold question" is whether, taking the facts in the light most favorable to the injured party, the alleged facts demonstrate that the official's conduct violated a constitutional right. *Saucier v. Katz*, 533 U.S. 194, 201 (2001). "To establish a substantive due process violation, plaintiffs must show that the behavior of the [official] was so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience," *Terrell v. Larson*, 396 F.3d 975, 978 (8th Cir. 2005) (quotations and citation omitted), and that the conduct "violated one or more fundamental rights." *Moore v. Briggs*, 381 F.3d 771, 773 (8th Cir. 2004). If we conclude that the alleged facts do not establish the violation of a constitutional right, then we need not address the second inquiry. *Id*.

"On the other hand, if a violation could be made out on a favorable view of the parties' submissions, the next, sequential step is to ask whether the right was clearly established." *Saucier*, 533 U.S. at 201. To determine whether a right is "clearly established," we ask "whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Id*. at 202.

As to the threshold inquiry, the Supreme Court has held that "suppression by the *prosecution* of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the

good faith or bad faith of the prosecution." *Brady v. Maryland*, 373 U.S. 83, 87 (1963) (emphasis added). We recognized this constitutional violation in our previous decision granting Clemmons habeas relief for the prosecution's failure to divulge the IOC. *See Clemmons*, 124 F.3d at 949.

We have, however, also recognized that while "[t]he *Brady* doctrine imposes an absolute duty on the prosecutor to produce all materially favorable evidence in the State's possession," the Court "has never imposed this absolute duty on law enforcement officials other than the prosecutor." *Villasana v. Wilhoit*, 368 F.3d 976, 979 (8th Cir. 2004). The "Due Process Clause is simply not implicated by a *negligent act* of an official causing unintended loss of or injury to life, liberty, or property." *Daniels v. Williams*, 474 U.S. 327, 328 (1986) (emphasis added) (overruling *Parratt v. Taylor*, 451 U.S. 527 (1981), "to the extent that it states that mere lack of due care by a state official may 'deprive' an individual of life, liberty, or property under the Fourteenth Amendment"). "[I]t would be impermissible to hold the police liable for due process violations under § 1983 where they have acted in good faith." *Jean v. Collins*, 221 F.3d 656, 660 (4th Cir. 2000). "Indeed, negligent conduct cannot by definition establish the 'affirmative abuse of power' necessary to constitute a due process deprivation." *Id*. Therefore, where no evidence exists that the investigator acted in bad faith or "engaged in a conscious effort to suppress exculpatory evidence," the accused's due process rights have not been violated. *Villasana*, 368 F.3d at 980 (internal quotations and citation omitted).

Likewise, "[n]egligent failure to investigate other leads or suspects does not violate due process." *Wilson v. Lawrence County, Mo.*, 260 F.3d 946, 955 (8th Cir. 2001) (citing *Daniels*, 474 U.S. at 334). Even allegations of gross negligence fail to establish a constitutional violation. *Id*. "[O]nly *reckless* or *intentional* failure to investigate other leads offends a defendant's due process rights." *Id*. (emphasis added).

We hold that, under the first prong of *Saucier*, Investigator Brooks did not violate Clemmons's constitutional rights, as Clemmons adduced no evidence that Brooks acted intentionally, recklessly, or in bad faith when he failed to disclose the IOC to the prosecutor and failed to investigate Clark's statement that Bagby murdered Johnson. While Clemmons argues that he demonstrated recklessness by providing evidence that Investigator Brooks received the IOC, failed to interview Clark, failed to interview other eyewitnesses, and failed to include the IOC to the prosecutor, he has offered no explanation for why these actions constitute recklessness as opposed to mere negligence. "[C]onclusory allegations will not suffice." *Jean*, 221 F.3d at 662.

As a matter of law, we conclude that the undisputed facts establish that Investigator Brooks's actions were not intentional or reckless. Mere negligence on Brooks's part by failing to disclose the IOC or investigating another lead is insufficient to deny him qualified immunity. First, Captain Gross stated in the IOC that "Clark's statement was not credible." Brooks may have erroneously relied on Gross's credibility assessment or been less than thorough, but, without more, his actions cannot be deemed "reckless." Investigator Brooks had the eyewitness statement of Officer Steigerwald identifying Clemmons as the perpetrator. Second, as in *Villasana*, Clemmons has produced no evidence that Brooks consciously sought to suppress exculpatory evidence by failing to disclose the IOC to the prosecutor. Third, Clemmons has not alleged that Investigator Brooks unlawfully coerced others to suppress the exculpatory evidence or refrain from investigating other leads. *See Wilson*, 260 F.3d at 955 (agreeing with the district court's conclusion that "[i]f [the plaintiff's] allegations about unlawful coercion are proved true, a reasonable factfinder could determine that Defendants recklessly or intentionally chose to force [the plaintiff] to confess instead of attempting to solve the murder through reliable but time consuming investigatory techniques designed to confirm their suspicions") (quotations and citation omitted).

Therefore, we hold that Investigator Brooks is entitled to qualified immunity.

-7-

B. *Personal Involvement*

As to Clemmons's cross-appeal, we review de novo the district court's grant of summary judgment to Warden Armontrout and Gross. *Freeman v. Ace Tel. Ass'n*, 467 F.3d 695, 697 (8th Cir. 2006).

"Liability under section 1983 requires a causal link to, and direct responsibility for, the deprivation of rights. To establish personal liability of the supervisory defendants, [the plaintiff] must allege specific facts of personal involvement in, or direct responsibility for, a deprivation of his constitutional rights." *Mayorga v. Missouri*, 442 F.3d 1128, 1132 (8th Cir. 2006) (internal quotations and citations omitted). A plaintiff fails to meet this burden where no evidence is presented that the officials caused the suppression of exculpatory evidence "or that [the officials] participated in the investigation in anything other than a limited manner." *Fleming v. Greater St. Louis Area Major Case Squad*, 48 F.3d 1223, 1995 WL 57457, at *2 (8th Cir. Feb. 14, 1995) (unpublished). "[A] warden's general responsibility for supervising the operations of a prison is insufficient to establish personal involvement." *Ouzts v. Cummins*, 825 F.2d 1276, 1277 (8th Cir. 1987).

Captain Gross's investigation of Johnson's murder was brief and limited, as he only supervised a preliminary investigation into the stabbing incident *until* Investigator Brooks arrived to take over the investigation. Once Investigator Brooks took over the investigation, Captain Gross had nothing further to do with it. In addition, the undisputed facts show that Captain Gross forwarded the information that he received from Clark to Investigator Brooks via the IOC.

As to Warden Armontrout, his general supervisory duties are also insufficient to establish his personal involvement in the investigation. Clemmons has produced no evidence indicating that Warden Armontrout was ever directly involved in the investigation of Johnson's murder. Furthermore, although Warden Armontrout did receive a copy of the IOC, it was Investigator Brooks, not Warden Armontrout, who

was responsible for putting the packet of investigatory materials together for the prosecutor.

Because the undisputed facts establish that Captain Gross and Warden Armontrout had only minimal personal involvement in the investigation, we hold that a reasonable jury could not return a verdict in Clemmons's favor. Therefore, the district court properly granted summary judgment to Warden Armontrout and Captain Gross.

### III. *Conclusion*

Accordingly, we reverse the district court's denial of qualified immunity to Investigator Brooks and affirm the district court's grant of summary judgment to Warden Armontrout and Captain Gross.

_____