# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 07-3676

_____

Vernon Bonner,

        Plaintiff-Appellee,

v.

T. C. Outlaw,

        Defendant-Appellant.

    *  Appeal from the United States
    *  District Court for the District
    *  of Minnesota.

_____

Submitted: October 15, 2008
Filed: January 9, 2009

_____

Before BYE, JOHN R. GIBSON, and SMITH, Circuit Judges.

_____

BYE, Circuit Judge.

T. C. Outlaw filed an interlocutory appeal from the district court's[1] denial of his motion to dismiss, or for summary judgment, on the basis of qualified immunity. We affirm.

---

[1]The Honorable John R. Tunheim, United States District Judge for the District of Minnesota.

I

Vernon Bonner was an inmate at the Federal Correctional Institution ("FCI") in Waseca, Minnesota. T. C. Outlaw was the warden at FCI. While Bonner was incarcerated at FCI, his attorney, Thomas J. Organ, twice sent him correspondence, which included trial transcripts Bonner allegedly needed to pursue other litigation. The correspondence was rejected by prison officials because they were not in compliance with prison regulations pertaining to the receipt of "packages." Bonner was not notified his mail was rejected either time. Bonner eventually learned of the rejections from his attorney, and he completed the grievance process with respect to the rejection of the packages and the lack of notice that those packages were rejected.

Bonner filed a <u>Bivens</u>[2] action against Outlaw, the Federal Bureau of Prisons, and Sue McIntosh, a Bureau of Prisons employee who was assigned to the mail room. Bonner alleged violations of the First, Fifth, and Sixth Amendments to the U.S. Constitution. Bonner claimed the rejection of the packages violated his constitutional rights, as did Outlaw's failure to notify him of the rejections. The defendants filed a motion to dismiss, which the district court granted. On appeal, this Court affirmed the dismissal of all claims based on the actual rejections of the packages. <u>Bonner v. Fed. Bur. of Prisons</u>, 196 F. App'x 447, 448 (8th Cir. 2008) (per curiam). We concluded the rejection of the packages did not violate Bonner's constitutional rights because they did not comply with valid prison regulations. <u>Id.</u> We noted, however, "[i]nmates do have a right to procedural due process . . . when their mail is rejected." <u>Id.</u> Thus, we remanded Bonner's procedural due process claim against Outlaw because the "district court did not address Bonner's allegation that defendant T. C. Outlaw failed to notify him that his incoming mail had been returned." <u>Id.</u>

_____

[2]<u>Bivens v. Six Unknown Named Agents of the Fed. Bur. of Narcotics</u>, 403 U.S. 388 (1971).

-2-

On remand, Outlaw filed a motion to dismiss for failure to state a claim or for summary judgment. Among other grounds for relief, Outlaw asserted the defense of qualified immunity. The district court denied Outlaw qualified immunity, concluding Bonner alleged the violation of a clearly established constitutional right. Outlaw filed the instant interlocutory appeal challenging the district court's denial of qualified immunity.

II

Outlaw can appeal the district court's denial of qualified immunity pursuant to the collateral order doctrine. Lindsey v. City of Orrick, 491 F.3d 892, 897 (8th Cir. 2007). This court reviews de novo the district court's denial of qualified immunity. Brown v. Fortner, 518 F.3d 552, 558 (8th Cir. 2008). To determine whether Outlaw is entitled to qualified immunity, we engage in a two-step analysis. First, we ask "whether, taking the facts in the light most favorable to the injured party, the alleged facts demonstrate that [Outlaw] violated a constitutional right." Lindsey, 491 F.3d at 897 (alteration added) (quoting Clemmons v. Armontrout, 477 F.3d 962, 965 (8th Cir. 2007)). If so, "we next ask whether the right is clearly established or, to put it another way, 'whether it would be clear to [Outlaw] that [his] conduct was unlawful in the situation [he] confronted.'" Id. (alterations added) (quoting Clemmons, 477 F.3d at 965).

A

Taking the facts in the light most favorable to Bonner, they demonstrate Outlaw violated Bonner's constitutional right to procedural due process by failing to notify him that his incoming mail had been returned. To state a procedural due process violation, Bonner must first demonstrate the deprivation of a protected liberty or property interest. Senty-Haugen v. Goodno, 462 F.3d 876, 886 (8th Cir. 2006). If he does so, the amount of process due Bonner is determined by balancing the specific

-3-

interest affected, the likelihood the challenged action would result in an erroneous deprivation of that right, and the burden of providing additional procedures, including administrative costs and burdens.  Id.; see Matthews v. Elridge, 424 U.S. 319, 335 (1976).

In Procunier v. Martinez, the Supreme Court held "[t]he interest of prisoners and their correspondents in uncensored communication by letter, grounded as it is in the First Amendment, is plainly a 'liberty' interest within the meaning of the Fourteenth Amendment even though qualified of necessity by the circumstance of imprisonment."  416 U.S. 396, 417 (1974), overruled on other grounds by, Thornburgh v. Abott, 490 U.S. 401 (1989).  As such, "the decision to censor or withhold delivery of a particular letter must be accompanied by minimum procedural safeguards."  Id.  The Court approved a requirement that an inmate be notified of the rejection and have a reasonable opportunity to protest the decision, concluding such requirements "do not appear to be unduly burdensome."  Id.

Outlaw argues Procunier is inapplicable because its holding applies to "letters," not to the "packages" rejected in this case.  Outlaw's argument fails, however, because the reasoning of Procunier applies to all forms of correspondence addressed to an inmate.  It is the inmate's interest in "uncensored communication" that is the liberty interest protected by the due process clause, regardless of whether that communication occurs in the form of a letter, package, newspaper, magazine, etc.  Thus, whenever prison officials restrict that right by rejecting the communication, they must provide minimum procedural safeguards, which include notice to an inmate that the correspondence was rejected.  See id.  Although Procunier discusses letters, that is because letters were simply the form of correspondence at issue in that specific case.  Nothing about the reasoning of Procunier justifies treating packages differently than letters for purposes of the notice that should be given an inmate when correspondence addressed to that inmate is rejected.  Courts, including this one, have routinely rejected the distinction Outlaw advances here and have applied Procunier

to numerous forms of correspondence other than letters.  See Ping v. Raleigh, No. 98-2739, 2000 WL 59539, at *1 (8th Cir. Jan. 24, 2000) (holding due process rights apply to rejection of "play-by-mail games"); Sorrels v. McKee, 290 F.3d 965, 972 (9th Cir. 2002) (holding due process rights apply to rejection of Georgetown Law Journal); Krug v. Lutz, 329 F.3d 692, 697 (9th Cir. 2003) (holding due process rights apply to rejection of subscription magazines); Jacklovich v. Simmons, 392 F.3d 420, 433 (10th Cir. 2004) (holding due process rights apply to rejection of newspapers); Montcalm Publ'g Corp. v. Beck, 80 F.3d 105, 109 (4th Cir. 1996) (holding due process rights apply to rejection of subscription magazines); Hopkins v. Collins, 548 F.2d 503, 504 (4th Cir. 1977) (holding due process rights apply to rejection of newspapers).

Outlaw, citing several cases, argues packages have unique characteristics and pose greater security concerns than other types of correspondence, thus justifying different treatment.  See Bell v. Wolfish, 441 U.S. 520, 555 (1979) (reversing court of appeals decision striking down prison policies governing the amount of packages an inmate could receive, noting "such packages are handy devices for the smuggling of contraband."); Weiler v. Purkett, 137 F.3d 1047, 1050 (8th Cir. 1998) (upholding prison regulation limiting receipt of packages).  These cases, however, concern an inmate's First Amendment rights with respect to receiving packages, not an inmate's due process rights to notice when those package are rejected.  While there may be valid reasons for treating packages differently than letters in terms of an inmate's right to receive the correspondence, we see no justification for treating packages differently than letters with respect to the notice that should be provided to an inmate once a package is rejected.[3]

To support his interpretation of Procunier, Outlaw relies on a Bureau of Prisons regulation governing an inmate's notification of rejected correspondence, which provides:

---

[3]As noted previously, the decision to reject the packages is no longer at issue in this case.

> When correspondence is rejected, the Warden shall notify the sender in writing of the rejection and the reasons for the rejection. The Warden shall also give notice that the sender may appeal the rejection. The Warden shall also notify an inmate of the rejection of any letter addressed to that inmate, along with the reasons for the rejection and shall notify the inmate of the right to appeal the rejection.

28 C.F.R. § 540.13. Outlaw argues this regulation distinguishes between letters and other correspondence, requiring an inmate be notified for rejections of the former but not the latter. He contends the regulation requires notice to a sender when all correspondence is rejected, but notice to an inmate only when "a letter addressed to that inmate" is rejected. In contrast, Bonner claims the regulation does not support Outlaw's interpretation, arguing the regulation is, at best, silent about whether an inmate should receive notice when something other than a letter is rejected.

We need not decide whether 28 C.F.R. § 540.13 authorized Outlaw's decision not to give Bonner notice his packages were rejected. Even if the regulation does make the distinction Outlaw argues here, the constitutionality of his conduct is governed by case law, not regulations. For the reasons previously explained, the case law is clear that an inmate has a right to procedural due process—including notice—whenever any form of correspondence addressed to that inmate is rejected.

Outlaw argues that because his decision not to give notice was authorized by 28 C.F.R. § 540.13, we should analyze his conduct under the more deferential standard announced in Turner v. Safley, which allows prison rules to restrict a prisoner's constitutional rights if they are "reasonably related to legitimate penological interests" and are not an "exaggerated response" to such objectives. Turner v. Safley, 482 U.S. 78, 87 (1987). In determining the reasonableness of a regulation restricting a constitutional right, courts consider: (1) whether there is a "valid, rational connection between the prison regulation and the legitimate governmental interest put forward to justify it"; (2) whether there are "alternative means of exercising the right

-6-

that remain open to prison inmates"; (3) what impact accommodation of the constitutional right will "have on guards and other inmates, and on the allocation of prison resources generally"; and (4) whether there are "ready alternatives for furthering the government interest available." Beard v. Banks, 548 U.S. 521, 529 (2006) (quoting Turner, 482 U.S. at 89-90).

Outlaw's argument is unpersuasive for several reasons. First, we doubt Turner's applicability to the restriction of a specific constitutional right, e.g., notice, the Supreme Court has already declared applicable in a given situation. This is especially true for rights of procedural due process, which involve weighing the exact same considerations—governmental interest, alternative means of exercising the right, and additional burdens—as are also relevant in determining whether a prison regulation is reasonable under Turner, and were already considered by the Supreme Court in declaring such a right to exist in the first place. Second, even if Turner did apply, we would conclude the regulation is unreasonable for those very same reasons. The Supreme Court in Procunier weighed these same considerations and found inmates are entitled to notice when correspondence addressed to them is rejected, and Outlaw has not advanced any persuasive argument for treating packages differently. There is no governmental interest advanced by the regulation, inmates do not have alternative means of receiving notice, and there are no additional burdens placed on prison officials by having to give notice. Therefore, we do not believe Turner affects the analysis.

Outlaw next argues the facts do not demonstrate a constitutional violation because he was not personally involved in the decision not to give Bonner notice his packages were returned. In a Bivens action, there is no respondeat superior liability. Estate of Rosenberg v. Crandell, 56 F.3d 35, 37 (8th Cir. 1995). Defendants are liable for their personal acts only, and a warden's general responsibility for supervising a prison is insufficient to establish personal liability. Id. Outlaw argues, and submitted a declaration in support, that he has no personal involvement in the day-to-day

-7-

operations of the mail room. Bonner's complaint, however, sufficiently places responsibility for the lack of notice on Outlaw. Primarily, Bonner may be able to prove Outlaw was personally involved in creating, applying, or interpreting a policy that failed to adhere to the notice requirements of Procunier. See Trudeau v. Wyrick, 713 F.2d 1360, 1367 (8th Cir. 1983). Additionally, if Outlaw had no role in deciding what notice procedures to follow, Bonner may be able to prove Outlaw was liable for failing to train or supervise mail room employees to follow the requirements of Procunier. See id. Although Outlaw's exact role is unclear at this stage of litigation, it is important that we are reviewing a limited record in which discovery has yet to take place. Bonner's complaint sufficiently alleges Outlaw's personal involvement. Whether there is a genuine issue of fact concerning Outlaw's personal involvement for purposes of summary judgment is outside our jurisdiction to review on interlocutory appeal. See White v. McKinley, 519 F.3d 806, 812-13 (8th Cir. 2008).

Outlaw's final argument for the lack of a constitutional violation is that Bonner did in fact receive notice from his attorney that his packages were rejected. Outlaw relies on our statement in Nunley v. Department of Justice that "a person cannot complain about the constitutionality of the method used to provide notice when he or she has received actual notice (assuming it is timely), for he or she has suffered no harm." 425 F.3d 1132, 1139 (8th Cir. 2005). This argument fails, however, because Bonner alleges he suffered harm from the delay in receiving notice. If true, then the notice he ultimately received from his attorney was not timely. Whether Bonner did in fact suffer harm from the delay in notice is an issue of fact outside our jurisdiction to resolve at this stage in the litigation. See White, 519 F.3d at 812-13.

B

Bonner's right to receive notice his packages were rejected was clearly established. This Court "has taken a broad view of what constitutes 'clearly

established law' for the purposes of a qualified immunity inquiry." <u>Lindsey</u>, 491 F.3d at 902 (quoting <u>Sexton v. Martin</u>, 210 F.3d 905, 909 (8th Cir. 2005)). "The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." <u>Id.</u> (quoting <u>Anderson v. Creighton</u>, 483 U.S. 635, 640 (1987)). The Supreme Court has "changed the clearly established law inquiry from a hunt for prior cases with precisely the same set of facts to asking whether the official had fair notice [his or] her conduct was unconstitutional." <u>Id.</u> Thus, "officials can still be on notice that their conduct violates established law even in novel factual circumstances." <u>Hope v. Pelzer</u>, 536 U.S. 730, 741 (2002). The question is whether the law gave the officials "fair warning that their alleged conduct was unconstitutional." <u>Brown v. Fortner</u>, 518 F.3d 552, 561 (8th Cir. 2008) (quoting <u>Young v. Selk</u>, 508 F.3d 868, 875 (8th Cir. 2007)).

Outlaw's conduct violated Bonner's clearly established rights because the law gave Outlaw "fair warning" his conduct was unconstitutional. Over thirty years ago, the Supreme Court in <u>Procunier</u> declared that inmates have a due process right to notice whenever correspondence addressed to them is rejected. <u>See</u> <u>Procunier</u>, 416 U.S. at 417. Outlaw argues he did not have fair notice <u>Procunier</u> applies to packages because <u>Procunier</u> only discussed letters, and he reasonably relied on 28 C.F.R. § 540.13 to support his interpretation of <u>Procunier</u>. We believe, however, such an interpretation of <u>Procunier</u> strains credulity. The reasoning of <u>Procunier</u> clearly applies to all forms of correspondence, even if the decision only discussed letters. There is no valid reason for distinguishing between letters and packages: the inmate's liberty interest is the same and there is no additional administrative burden involved.

Moreover, even if Outlaw's strained interpretation of <u>Procunier</u> was reasonable shortly after the decision was issued, subsequent case law gave fair warning that <u>Procunier</u> applies to more than just letters. <u>Ping</u>, 2000 WL 59539, at *1 (applying <u>Procunier</u> to rejection of "play-by-mail games"); <u>Sorrels</u>, 290 F.3d at 972 (applying <u>Procunier</u> to rejection of <u>Georgetown Law Journal</u>); <u>Krug</u>, 329 F.3d at 697 (applying

<u>Procunier</u> to rejection of subscription magazines); <u>Jacklovich</u>, 392 F.3d at 433 (applying <u>Procunier</u> to rejection of newspapers); <u>Montcalm Publ'g Corp.</u>, 80 F.3d at 109 (applying <u>Procunier</u> to rejection of subscription magazines); <u>Hopkins</u>, 548 F.2d at 504 (applying <u>Procunier</u> to rejection of newspapers).  Outlaw is unable to cite a single case holding <u>Procunier</u> does not apply to a specific form of correspondence addressed to an inmate.  Thus, Outlaw had fair warning that <u>Procunier</u> applies to all forms of correspondence, including the packages at issue in the present case.  As such, a reasonable official would understand that failing to give Bonner notice his packages were rejected violates a constitutional right.[4]  Therefore, Bonner has alleged the violation of a clearly established constitutional right.

III

Accordingly, we affirm the decision of the district court.

_____

---

[4]As evidence for his argument it was not clearly established <u>Procunier</u> applied to packages, Outlaw relies on 28 C.F.R. § 540.13.  Even if Outlaw's interpretation of the regulation is correct, however, we do not think an official can rely on a regulation authorizing a course of conduct that case law overwhelming makes clear is unconstitutional.  Regardless of the regulation, courts have uniformly held that <u>Procunier</u> applies to forms of correspondence other than letters.