# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 09-1271

_____

Susan L. Wallingford; Greg E. Hajek,       *
                                           *
             Appellees,                    *
                                           *    Appeal from the United States
       v.                                  *    District Court for the
                                           *    District of Nebraska.
Jeff Olson, In Individual                  *
and Official Capacities,                   *
                                           *
             Appellant.                    *

_____

Submitted: November 17, 2009
Filed:  January 25, 2010

_____

Before WOLLMAN, RILEY, and SHEPHERD, Circuit Judges.

_____

RILEY, Circuit Judge.

       Susan L. Wallingford (Wallingford) and her boyfriend, Greg E. Hajek (Hajek), filed a civil action in federal district court under 42 U.S.C. § 1983 alleging, among other claims, excessive force against Jeff Olson (Deputy Olson), a deputy with the Colfax County, Nebraska, Sheriff's Department.  Deputy Olson and several other named defendants filed joint motions for summary judgment, based, in part, on qualified immunity.  The district court granted Deputy Olson's motion for summary judgment, in part, but denied the motion as to Wallingford's excessive force claim

against Deputy Olson in his individual capacity. Deputy Olson appeals the district court's denial of qualified immunity. We reverse.

## I. BACKGROUND

On July 30, 2006, Wallingford and Hajek were each driving motorized Pagsta scooters near the Colfax County Courthouse in Schuyler, Nebraska. Deputy Olson was standing in front of the courthouse speaking with Jerome Stewart (Officer Stewart), a police officer for the Schuyler Police Department. Deputy Olson asserts he heard a loud muffler and observed two individuals driving motorized scooters and wearing improper helmets. The individuals stopped at a nearby stop sign and, according to Deputy Olson, excessively revved their engines. Wallingford acknowledged she was wearing an improper helmet and claims she told Deputy Olson she had a proper helmet at home. Wallingford also asserted she revved her scooter engine to keep it from stalling. Officer Stewart pulled over both scooters, and Deputy Olson arrived shortly thereafter.

Officer Stewart and Officer Scott Wimer (Officer Wimer) made contact with Hajek while Deputy Olson spoke with Wallingford.[1] During the traffic stop, Deputy Olson issued Wallingford a citation for driving a motorized vehicle with a muffler defect and for wearing an improper helmet. Deputy Olson asked Wallingford to step over to his patrol car, and Wallingford complied. Deputy Olson then explained the citation to Wallingford. When Deputy Olson asked Wallingford to sign the citation, Wallingford refused and stated her lawyer had advised her not to sign citations. Deputy Olson informed Wallingford that she needed to sign the citation to show Wallingford intended to appear in court on the date specified on the citation. Deputy Olson further explained that if Wallingford refused to sign the citation, she could be

---

[1]Because this appeal arises out of Wallingford's claim against Deputy Olson, only the facts pertaining to Wallingford are relevant for purposes of this appeal.

taken to jail. Wallingford admits Deputy Olson provided her with this information, and she repeatedly refused to sign the citation.

The parties dispute the events which took place after Wallingford refused to sign her citation. Deputy Olson's patrol car contained a video camera which recorded much of the altercation between Deputy Olson and Wallingford. However, the recording did not capture the oral statements made by Wallingford and Deputy Olson during the incident.

Wallingford charges Deputy Olson grabbed her by the breast and threw her face down on the patrol car with enough force to cause bruising. Wallingford states that when she was "forced face down against the police car, Wallingford felt a burning sensation in her chest and immediately and instinctively turned around to slap" Deputy Olson. Wallingford maintains Deputy Olson responded by throwing her onto the street and, as a result, she fractured her foot and struck her head on the pavement, instantly causing blurred vision.

Deputy Olson relates he told Wallingford she was under arrest and instructed Wallingford to turn around. Deputy Olson says Wallingford began to back away from him, so he "grabbed . . . Wallingford's left arm to place it behind her back in order to handcuff her." Deputy Olson maintains Wallingford began to pull away and resist, so he placed Wallingford against the hood of his patrol car "to gain control of her." Deputy Olson then "handcuffed [Wallingford's] left hand and was trying to get her right hand which she had under her chest." Deputy Olson claims he asked Wallingford for her right hand, but Wallingford refused, and declared "that if she was going to jail, it [would] be for something." Wallingford then turned around and struck Deputy Olson on the left side of his face with her right hand. Deputy Olson contends Wallingford's momentum continued, and Wallingford fell to the ground. Deputy Olson "placed [himself] on top of . . . Wallingford and attempted to get her right hand cuffed." Deputy Olson stated Wallingford refused to give him her right hand, even

after the fall, but he "was finally able to get a hold of Wallingford's right arm and then brought it behind her back and placed it into the handcuffs."

Following the arrest, Wallingford was transported to the hospital, but Wallingford refused treatment. Deputy Olson then drove Wallingford to the Colfax County correctional facility and issued Wallingford a citation for assault on a police officer, resisting arrest, and failure to sign a citation. Wallingford claimed, by affidavit, that she saw a doctor the day after the incident and learned her foot was fractured.

On May 28, 2008, Wallingford and Hajek filed an amended complaint against Colfax County, the Colfax County Sheriff, and Deputy Olson (collectively, county defendants), as well as Officer Stewart, Officer Wimer, the City of Schuyler, and the Schuyler Chief of Police (collectively, city defendants). Wallingford and Hajek alleged various civil rights violations under 42 U.S.C. § 1983, including: (1) excessive force against Deputy Olson, Officer Stewart, and Officer Wimer in their individual and official capacities; (2) failure to train and supervise against the Schuyler Chief of Police, the Colfax County Sheriff, the City of Schuyler, and the County of Colfax; and (3) negligent hiring against the Schuyler Chief of Police, the Colfax County Sheriff, the City of Schuyler, and the County of Colfax.

The county defendants filed a joint motion for summary judgment, and the city defendants thereafter filed a joint motion for summary judgment. The district court granted the defendants' motions for summary judgment, in part, leaving only three claims for trial: Wallingford's claim of excessive force against Deputy Olson in his individual capacity, and Hajek's claims of excessive force against Officers Stewart and Wimer in their individual capacities. This appeal relates only to the district court's denial of qualified immunity as to Wallingford's claim of excessive force against Deputy Olson in his individual capacity.

## II.    DISCUSSION

Deputy Olson asserts the district court erred by denying Deputy Olson qualified immunity and in failing to conduct a sufficient analysis of the facts to determine whether Deputy Olson was entitled to qualified immunity. We agree. "[A]n order denying qualified immunity is immediately appealable even though it is interlocutory; otherwise, it would be 'effectively unreviewable.'" Scott v. Harris, 550 U.S. 372, 376 n.2 (2007) (quoting Mitchell v. Forsyth, 472 U.S. 511, 527 (1985)). "Qualified immunity is 'an *immunity from suit* rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial.'" Id. (quoting Mitchell, 472 U.S. at 526). "'[G]overnment officials performing discretionary functions, generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" Winters v. Adams, 254 F.3d 758, 766 (8th Cir. 2001) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). "We review de novo the district court's denial of qualified immunity." White v. McKinley, 519 F.3d 806, 813 (8th Cir. 2008) (citation omitted).

"The party asserting immunity always has the burden to establish the relevant predicate facts, and at the summary judgment stage, the nonmoving party is given the benefit of all reasonable inferences." Id. at 813 (citation omitted). In determining whether an officer is entitled to qualified immunity, we ask (1) "'whether, taking the facts in the light most favorable to the injured party, the alleged facts demonstrate that the official's conduct violated a constitutional right'"; and (2) whether the asserted constitutional right is clearly established. Id. (quoting Clemmons v. Armontrout, 477 F.3d 962, 965 (8th Cir. 2007)). We may address either question first. See Pearson v. Callahan, 555 U.S. ___, ___, 129 S. Ct. 808, 818 (2009). "'If either question is answered in the negative, the public official is entitled to qualified immunity.'" Norris v. Engles, 494 F.3d 634, 637 (8th Cir. 2007) (quoting Vaughn v. Ruoff, 253 F.3d 1124, 1128 (8th Cir. 2001)). "'To determine whether a right is clearly established we ask whether it would be clear to a reasonable officer that his conduct was unlawful in

the situation he confronted.'" White, 519 F.3d at 813 (quoting Clemmons, 477 F.3d at 965).

Although we view the facts and any reasonable inferences in the light most favorable to Wallingford, see, e.g., White, 519 F.3d at 813, we cannot ignore incontrovertible evidence which clearly contradicts Wallingford's allegations. In Scott, 550 U.S. at 380, the Supreme Court of the United States explained, "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment."

In Scott, the Supreme Court was confronted with a situation where a plaintiff was suing for damages arising out of an incident which was captured on a police cruiser's video camera. Id. at 378. The Supreme Court found the plaintiff's version of the facts was "so utterly discredited" by the facts depicted on the videotape "that no reasonable jury could have believed" the plaintiff's claims. Id. at 380. As a result, the Supreme Court reversed the Eleventh Circuit, holding the Court of Appeals should not have relied on the plaintiff's "fiction[al]" statements, but instead, "it should have viewed the facts in the light depicted by the videotape." Id. at 380-81. The Supreme Court concluded the officer was entitled to qualified immunity because, "view[ing] the facts in the light depicted by the videotape," the officer acted reasonably under the circumstances and did not violate the plaintiff's Fourth Amendment rights. Id. at 381, 386.

In the present case, we are presented with a situation similar to Scott. Wallingford alleges that after she refused to sign her citation, Deputy Olson "grabbed Wallingford by the breast and threw her against a police vehicle with enough force to cause bruising." Wallingford claims she "was then thrown onto the street and injured her head on the street pavement" and "[t]he fall was forceful enough to fracture Wallingford's foot." Despite Wallingford's claims of excessive force, the videotape

manifestly shows Deputy Olson did not (1) grab Wallingford by the breast, (2) "throw" her against a police vehicle, or (3) throw her on the street. Because the videotape clearly contradicts the version of the story told by Wallingford, we must "view[] the facts in the light depicted by the videotape." Id. at 381.

What the videotape does show is Deputy Olson giving Wallingford a citation; Wallingford not signing the citation; Deputy Olson attempting to handcuff Wallingford by taking Wallingford's left arm and Wallingford resisting his attempts; Deputy Olson successfully taking Wallingford's left arm, placing it behind her back, and leaning Wallingford on the hood of his patrol car with minimal force; Wallingford actively resisting Deputy Olson's attempts to handcuff her right arm; Wallingford then spinning around and striking Deputy Olson across the face with her right hand; and Wallingford losing her balance and falling to the ground, with her momentum pulling Deputy Olson on top of her. These facts do not amount to a Fourth Amendment violation.

The videotape conspicuously refutes and completely discredits Wallingford's version of the material facts upon which she bases her excessive force claim against Deputy Olson. The videotape demonstrates, as a matter of law, Deputy Olson's conduct was objectively reasonable under the circumstances. See id. at 381-86. The district court erred in denying Deputy Olson qualified immunity as to Wallingford's claim of excessive force.

## III.   CONCLUSION
We reverse the judgment of the district court and grant Deputy Olson qualified immunity from Wallingford's excessive force claim.

_____

-7-