NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted May 21, 2014[*]
Decided May 21, 2014

**Before**

RICHARD A. POSNER, *Circuit Judge*

JOEL M. FLAUM, *Circuit Judge*

FRANK H. EASTERBROOK, *Circuit Judge*

No. 13-3905

| | |
|---|---|
| NATANAEL RIVERA, | Appeal from the United States District |
| *Plaintiff-Appellant*, | Court for the Western District of Wisconsin. |
| | |
| *v.* | No. 12-cv-476-bbc |
| | |
| GEORGE JIMENEZ, et al., | Barbara B. Crabb, |
| *Defendants-Appellees*. | *Judge*. |

**O R D E R**

Natanael Rivera, a Wisconsin inmate, protested his limited visitation privileges by twice covering the window of his segregation cell to keep staff from seeing inside. Both times guards overpowered him, which led to this suit claiming that one of the guards, George Jimenez, violated the Eighth Amendment. *See* 42 U.S.C. § 1983. The

---

[*] After examining the briefs and the record, we have concluded that oral argument is unnecessary. Thus, the appeal is submitted on the briefs and the record. *See* FED. R. APP. P. 34(a)(2)(C).

plaintiff alleged that, after he was subdued, Jimenez sought to humiliate him by parading him naked in front of other inmates. The plaintiff also alleged that Jimenez repeatedly kneed him in the back for no reason. At summary judgment, however, the district court concluded that a 44-minute video of the incident discredits Rivera's story.

That video, recorded by another guard, captures the following events, which begin with guards demanding that Rivera remove a towel draped over the window in his cell door. Instead of complying he yelled profanities and threatened to fight anyone who entered. Guards eventually shot pepper spray into the cell. Rivera then removed the towel and complied with instructions to remove his clothes and submit to a strip search. Afterward the guards, including Jimenez, escorted Rivera, naked, past other inmates to the shower to wash off the spray. The same guards then took Rivera, still naked, to a cell uncontaminated by pepper spray. Each trip took about a minute.

Rivera then used the mattress to block the window of his new cell. The guards (including the cameraman) returned and ordered him to uncover the window. He refused. Rivera said he would take the "hard way" and didn't care if he caused injury. Once again the guards used pepper spray. Rivera eventually cleared the window and submitted when Jimenez and other guards entered to take him, again naked, to a neighboring, third cell. At the door to that cell, Rivera kneeled as instructed while his leg restraints were removed. But then he ignored repeated orders to stand and walk into the cell, and the guards tried to force him inside. He resisted, and the guards pushed him with their knees. Once inside Rivera declined another shower.

Rivera's § 1983 complaint names as defendants, besides Jimenez, several administrators and other guards. But the allegations in the body of the complaint mention only Jimenez, and thus at screening, *see* 28 U.S.C. § 1915A, the district court permitted Rivera to proceed against him alone. The court understood Rivera to claim that Jimenez had sought to humiliate him by letting other inmates see him naked, and that the defendant had used excessive force when using his knees to prod Rivera to enter the third cell. On the other hand, the court did not understand Rivera also to claim that the use of pepper spray or the strip search violated the Eighth Amendment.

Rivera asked the district court to recruit a lawyer for him, *see* 28 U.S.C. § 1915(e)(1), citing unspecified "mental health issues," poor spelling, and limited knowledge of the law. The court declined with the explanation that Rivera had not tried on his own to find counsel and, beyond that omission, his claims were straightforward and his filings to that point had shown him to be a competent litigant.

In moving for summary judgment, Jimenez introduced a copy of the video along with affidavits from himself and other guards who were present. Rivera opposed the motion and also asked the district court to reinstate his suit against four more of the named defendants, all of them guards. He asserted that the court, in screening his complaint, should have realized that his allegations implicate others besides Jimenez. He also asserted that the court should have understood that his complaint challenges the strip search as well as the use of pepper spray. The district court replied that it was too late for Rivera to seek reconsideration of the screening order. Nor would it do him any good, the court added, because the video forecloses any possible claim against any guard. The video, the court explained, shows that Jimenez and the other guards responded reasonably to Rivera's obstinance and threats. In particular, the nude walk was brief and not meant to humiliate, and the guards pushed Rivera with their knees only briefly when he stubbornly disobeyed orders to walk into the cell on his own.

On appeal Rivera primarily objects to the district court's reliance on the video at summary judgment. The video is doctored, he insists, as discrepancies from scene to scene supposedly make evident (e.g., a prison guard is wearing a "silver metallic watch" at one point and a "gray plastic watch" at another). This accusation deserves no further discussion. The video shows exactly what the district court said it does, and granting summary judgment for the defendant is appropriate when a video discredits the plaintiff's version of events. *Scott v. Harris*, 550 U.S. 372, 378–41 (2007); *Poole v. City of Shreveport*, 691 F.3d 624, 630–31 (5th Cir. 2012); *Thomas v. Durastanti*, 607 F.3d 655, 664–65 (10th Cir. 2010); *Wallingford v. Olson*, 592 F.3d 888, 892–93 (8th Cir. 2010). Rivera has given us no reason to reverse the grant of summary judgment.

Rivera also asserts that his misconduct stemmed from an "outbreak of mental disorder" which made him think that the guards were going to kill him. But his claim that Jimenez (or the other guards) responded with excessive force turns on, not the reasons for his resistance, but the reasonableness of the force employed. *See Pena v. Leombruni*, 200 F.3d 1031, 1034 (7th Cir. 1999); *Palmquist v. Selvik*, 111 F.3d 1332, 1341 (7th Cir. 1997); *United States v. Serrata*, 425 F.3d 886, 905 (10th Cir. 2005).

Finally, Rivera contends that the district court abused its discretion in declining to recruit counsel for him. But Rivera did not show the district court that he tried to obtain counsel on his own, and that was reason enough to deny the request. *Jackson v. Kotter*, 541 F.3d 688, 700 (7th Cir. 2008); *Gil v. Reed*, 381 F.3d 649, 656 (7th Cir. 2004); *Jackson v. Cnty. of McLean*, 953 F.2d 1070, 1073 (7th Cir. 1992). We also agree with the district court's alternative conclusion that the legal and factual difficulty of the case did

not exceed Rivera's ability to litigate. Further, and more significant to our review, a lawyer could not have made a difference since the video leaves no doubt about the outcome of his lawsuit. Rivera has not shown the prejudice necessary to overturn the district court's decision. *See Navejar v. Iyiola*, 718 F.3d 692, 696 (7th Cir. 2013); *Pruitt v. Mote*, 503 F.3d 647, 659 (7th Cir. 2007) (en banc).

**AFFIRMED**.